UNITED STATES DISTRICT COURT

Eastern District of Louisiana

| | | |
|---|---|---|
| SOILEAU & ASSOCIATES, LLC, through and by its members, ISAAC H. SOILEAU JR. and KAREN S. KOVACH, also appearing herein individually and on behalf of K.S., a minor child | * * | |
| | * | Civil Action      No. 18-710 |
| Plaintiffs | * | |
| versus | * | Sec: G          Div: 3 |
| | * | Judge Nannette Jolivette-Brown |
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY d/b/a Blue Cross & Blue Shield of Louisiana | * * | Magistrate Judge Daniel E. Knowles, III |
| | * | **Jury Demand** |
| Defendants | * | |

\*     \*     \*     \*     \*     \*     \*     \*

**FIRST AMENDING & SUPPLEMENTAL COMPLAINT**

1.

NOW INTO COURT, come SOILEAU & ASSOCIATES, LLC, by and through its members, ISAAC H. SOILEAU JR. and KAREN S. KOVACH, appearing also herein individually and on behalf of K.S., a minor child, all of whom are beneficiaries of a policy of health insurance issued by defendant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross & Blue Shield of Louisiana (hereinafter "BCBSLA").

2.

Plaintiffs are Plan participants and beneficiaries of an insurance contract with BCBSLA, and bring these claims on their own behalf and on behalf of their daughter, K.S. and in a representative capacity for all persons similarly situated.

3.

Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., to the extent it is applicable, seeking to overturn arbitrary, capricious and unreasonable decisions by BCBSLA, as Plan and insurance policy claims administrator under the respective policies, denying claims for health insurance benefits, and seeking further to obtain other relief under the provisions of ERISA.

4.

Plaintiffs likewise bring this action under state law claims for negligence and breach of contract, bad faith claims handling, negligence, breach of fiduciary duty, and unjust enrichment, among others.

## JURISDICTION AND VENUE

5.

Jurisdiction is invoked herein pursuant to 28 U.S.C. § 1331.  Further, this action includes an ERISA claim within the meaning of ERISA Section 502(a).  Thus, this court has jurisdiction pursuant to ERISA's Section 502(e)(1) (29 U.S.C. §1132(e)(1)).

6.

The court has supplemental jurisdiction over state law claims that arise out of the same common nucleus of operative fact as the ERISA claim, supra, 28 U.S.C. § 1367.

7.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is a district in which a substantial part of the events or omissions giving rise to the claim occurred, including being the location where the Health Insurance Policy at issue was issued to the Plaintiffs and, in the alternative, at least one defendant is subject to the court's personal jurisdiction in this district.

**PARTIES**

8.

Plaintiff K.S. herein is a minor child whose domicile is determined by her parent's domicile. Plaintiffs Isaac H. Soileau, Jr. and Karen S. Kovach are K.S.'s parents and are domiciled in and residents of St. Tammany Parish, State of Louisiana.  Therefore, at all times relevant herein K.S. was a domiciliary of Louisiana. However, at all times pertinent to this matter, K.S. was inpatient at Cumberland Hospital in New Kent, Virginia.

9.

Plaintiffs Soileau & Associates, LLC, Isaac H. Soileau, Jr., and Karen S. Kovach are and at all times relevant herein have been domiciliary of and residents in Louisiana.

10.

Defendant BCBSLA is an insurance company doing business in the State of Louisiana and more specifically was the insurer and de facto administrator of a group health insurance policy issued to Plaintiffs for their benefit and for the benefit of their minor child.

11.

Plaintiffs reserve the right to join any other Blue Cross & Blue Shield entity, subsidiary, or contractor, as warranted.

**ALLEGATIONS OF FACT**

**K.S. MEDICAL CONDITIONS**

12.

Prior to her recent inpatient treatment, K.S. had been diagnosed with traumatic brain injury, fetal alcohol syndrome, autism, pervasive developmental delays, ADHD-severe, PTSD, anxiety,

3

sensory disorders and several other neurological conditions by her treating physicians in Louisiana and also confirmed by an expert neuro-psychologist in Virginia and her treating doctors in Virginia.

13.

K.S. has received significant and extensive treatment for the diagnoses aforesaid and for other issues, including having been brought to various hospital emergency departments and or being involuntarily committed by physician emergency certificate to psychiatric hospitals in Louisiana several times in 2012, 2013, 2014, 2015 and 2016, and in Virginia in 2017.  These claims were paid by BCBSLA because they were medically necessary and the benefits were provided for in the provisions of the policy.

14.

Toward the end of 2014, K.S. began a cycle of physician emergency committals which resulted in several hospital stays in Louisiana.  BCBSLA processed and paid these claims as medically necessary.   In November and December of 2014, K.S.'s condition became so unsafe by repeated elopements from home into dangerous situations requiring either police or ambulance support or by physical aggression or property damage that both parents were essentially required to stay with her continually, almost 24 hours a day.

15.

K.S. was referred by several of her physicians for inpatient treatment to Cumberland Hospital for Children and Adolescents in New Kent, Virginia—once in November 2013 and again in December 2014.  Cumberland Hospital is an inpatient hospital that treats children and adolescents who have traumatic brain injuries, Autism/pervasive developmental delays and other medically related

conditions.  Cumberland's doctors and staff are noted for their ability to confirm diagnoses as well as for finding correct pharmacological remedies to assist the patients.  Cumberland Hospital accepted K.S. for treatment on both occasions but BCBSLA failed to pre-authorize or approve the requested inpatient stay as medically necessary.   And, while denying the treatment as not medically necessary, BCBSLA did not provide any reasons, or criteria or evaluation methodology on which this denial was based.

16.

After Plaintiffs appealed the December, 2014 denial of benefits, BCBSLA finally authorized inpatient treatment for K.S. on 6 January 2015 on the basis of several additional recommendations by some of K.S.'s other physicians. In its approval, BCBSLA accepted the inpatient treatment as medically necessary.

17.

Plaintiffs traveled from their home in St. Tammany Parish, Louisiana to New Kent, Virginia for K.S. to receive the required treatment.

18.

 K.S. was admitted to Cumberland Hospital for the medically necessary and pre-authorized inpatient treatment on January 7, 2015, which treatment lasted through August 11, 2015. During this inpatient stay, K.S. received both medical treatment to remove unneeded and unhelpful medications from her pharmacological regimen and doctor and staff performed behavior analyses that helped the Cumberland medical staff determine which medications would be both safe and helpful. Once at Cumberland, and after her medicine was adjusted, Katherine's behaviors became less frequent.  She also lost weight which helped with her depression and she was able to attend

the hospital's school with results including a two level reading advancement. Without a secure medical setting, this process would have been impossible because without medications, counseling and 24 hour / 7 days a week structure, K.S. is often uncontrollable and a danger to herself and others. This process was time consuming and incomplete when BCBSLA denied further inpatient treatment on August 11, 2015.

19.

BCBSLA arbitrarily and capriciously denied further authority for inpatient treatment stating that further treatment was not medically necessary in an inpatient setting, which forced Cumberland Hospital to prematurely discharge K.S. to home.  This arbitrary and capricious denial of further treatment forced K.S. out of treatment before she was ready or able to reintegrate into her home and school environments.   Thus, K.S.'s condition quickly deteriorated in both her home environment and in her school setting.  In fact, the St. Tammany Parish School Board sued the parents to have K.S. permanently excluded from school due to her regression including aggression, being a danger to herself and others as well as her instability and erratic conditions.  Other St. Tammany Parish school personnel either sued K.S.'s parents or filed criminal charges against K.S.

20.

After BCBSLA approved the 2015 stay as medically necessary, K.S.'s parents negotiated with Cumberland Hospital's business office an all-inclusive day rate of $1,050.00 for her inpatient stay. However, BCBSLA rebuked its fiduciary duties to act in the best interest of the Plan participants and instead demanded that they be allowed to negotiate the rate, which they then proceeded to negotiate for an increased amount of $1,192.00 per day. Still further, although the insurance policy does not require prepayment of approved services and even though Blue Cross had directly

6

negotiated the day rate, BCBSLA insisted that the Parents pay Cumberland Hospital directly and

then seek reimbursement only after Cumberland had invoiced Blue Cross/Blue Shield of Virginia.

The invoices for treatment were submitted by Cumberland to BCBSVA timely, and Plaintiffs made

demand for reimbursement upon BCBSLA after the discharge of K.S., but BCBSLA did not timely

reimburse Plaintiffs within 30 days of the demand for same.

## MEDICAL NECESSITY

21.

After her premature discharge from Cumberland Hospital, K.S.'s condition deteriorated and she

regressed in her coping skills and activities of daily living which had been learned during her stay

at Cumberland. She had again become a danger to herself and others.  This regression was seen on

a daily basis and eventually resulted in K.S. being placed on "Homebound" status by the St.

Tammany Parish School Board.

22.

Due to the denial of additional medically necessary inpatient care, K.S.'s condition further

deteriorated with exhibited behaviors of elopements into unsafe situations as well as physical

aggression and property damage, most of which required additional interventions by St. Tammany

Parish Sheriffs and or EMS personnel to protect K.S. from herself or to protect others or property.

This erratic behavior resulted in continual voluntary emergency department admissions in St.

Tammany Parish, as follows:

- St. Tammany Parish Hospital on August 20, 2015, September 22, 2015, September 28, 2015, and November 12, 2015;

- North Oaks Medical Center on December 11, 2015;

- Lakeview Hospital on January 22, 2016, February 2, 2016, February 10, 2016, February 21, 2016, February 29, 2016, March 17, 2016, March 20, 2016, and March 23, 2016.

23.

Furthermore, K.S. was involuntarily hospitalized five times for "stabilization" in psychiatric facilities in Louisiana as a result of the hospital emergency department doctors determining that she was too unsafe for herself and therefore unable to immediately return home, as follows:

- Northlake Behavioral Hospital in Mandeville, Louisiana from February 11 through 17, 2016;

- Brentwood Psychiatric Hospital in Shreveport, Louisiana from February 21 through 28, 2016;

- An immediate return to Brentwood on February 29 through March 13, 2016;

- Acadia Vermillion Hospital, in Lafayette, Louisiana which only kept K.S. for a two-day stay from March 20 through 22, 2016;

- The final involuntary visit to Lakeview led to her being committed by coroner's emergency certificate at Lakeview Hospital Emergency Department which commitment lasted for eight days in the emergency department because the hospital could not locate an adequate secure treatment facility in Louisiana that would admit her; and

- After the eight-day Physician Emergency Commitment stay in the Lakeside Emergency Department without any proper hygiene and without treatment or her correct medicines, K.S. was shipped by ambulance to Brentwood Hospital on March 30, 2016.  BCBSLA only authorized one day at Brentwood and K.S. was discharged home late on April 1, 2016.

8

24.

However, during these stays, as before K.S.'s first admission to Cumberland, she was constantly misdiagnosed by the physicians who would not accept the parents' observations nor even the prior medical reports as proof.  As a result of these misdiagnoses, K.S. again was subjected to changes in her medications and additional medications that were unhelpful and did not stop the regression. During this crisis period, K.S. received massive doses of inappropriate medications for invalid or incorrect diagnoses and suffered from being chemically restrained and battered by other patients.

25.

K.S.'s parents sought readmission to Cumberland Hospital and the hospital agreed to readmit her. However, BCBSLA denied pre-authorization of the inpatient stay by use of an out of state contracted "Medical Review" organization.  This BCBSLA contractor, Health Integrated, is a Tampa Florida organization, which, on information and belief, appears to merely provide doctors for hire to review and deny requests for services for insurance companies.  This denial was sent to the parents on March 14, 2016 but was not signed nor was the reviewer's identity disclosed. Further, the medical review firm did not see or personally evaluate K.S. before issuing its report. BCBSLA failed to provide to the Plan participants any method of evaluation, criteria or reasons within 30 days of the written request by Plaintiffs to the Plan administrator.

26.

The denial was appealed to BCBSLA directly, and a complaint was also lodged with the Louisiana Insurance Commissioner's office.  BCBSLA chose to respond to the Insurance Commissioner's investigator that the request for treatment would be approved as medically necessary and K.S. was authorized to return to Cumberland Hospital for treatment.

### RECENT INPATIENT TREATMENT

27.

Plaintiffs again travelled to New Kent, Virginia for the purpose of obtaining the medically necessary treatment for K.S. at Cumberland Hospital. Cumberland Hospital re-admitted K.S. for inpatient care on April 8, 2016. This second inpatient stay for care was far more difficult due to the arbitrary truncating by BCBSLA of K.S.'s prior inpatient stay at Cumberland Hospital in August of 2015. Cumberland Hospital again undertook to review and correct the pharmacological regimen for K.S. that had been altered inappropriately by the psychiatric hospitals during her involuntary committals. Cumberland also undertook to assist K.S. in developing adequate coping skills during her stay and provided 24 hour / 7days a week care and structure in a secure setting to prevent additional danger from elopements. Cumberland presented a treatment Plan to BCBSLA and held biweekly treatment team meetings to update this Plan. All of the Treatment Team Plans were regularly sent to BCBSLA by Cumberland Hospital and also by Plaintiffs. At no point during this stay did any BCBSLA personnel, either doctor or nurse, participate in any of the treatment team meetings. Therefore, BCBSLA only knew what was on the treatment team reports.

28.

The medical reports and Treatment Plans showed the need for ongoing inpatient treatment in a secure facility that could provide the support and accommodations that K.S. needed. K.S.'s treatment in 2016 was difficult due to her regression after her first stay. Further, she had to again be weaned off of the drugs she was on in a controlled secure setting and through behavior analyses a new pharmacological Plan was created. At this stay, Cumberland also agreed that there is a hormonal overlay to K.S.'s condition that should be addressed. However, Cumberland was unable

to accomplish this for several reasons, including K.S.'s increased agitation and regression, increased elopement attempts, severe depression and withdrawal from efforts to continue her education. Cumberland's experienced staff provided pharmacological support as well as appropriate structure, therapy, and training in life skills which are extremely important to K.S. and others with her same diagnoses.  Cumberland provided treatment for K.S. with BCBSLA authorizations that indicated BCBSLA's agreement that the inpatient treatment was medically necessary from April 8, 2016 until April 18, 2017. At that point, BCBSLA chose to again stop authorizing treatment because BCBSLA now claimed that inpatient treatment was no longer medically necessary.

### BCBSLA'S UNREASONABLE DENIAL

29.

On April 18, 2017, BCBSLA denied further inpatient treatment for K.S. at Cumberland as not medically necessary, effective April 19, 2017, without examining K.S. or informing Plaintiffs of the specific basis of the denial. This denial was again rendered by BCBSLA's agent/contractor, Health Integrated.  The denial was based on Dr. Barbara Nabrit-Stephenson's review of treatment records and without either a physical examination or a peer to peer consult.  Further, on April 18, 2017, K.S. eloped from her parents' condominium during a therapeutic off grounds pass and had to be brought by police to a local hospital emergency department to stabilize her before she could be safely transported by the parents back to the Cumberland facility.

30.

BCBSLA's denial letter states that a "peer to peer" review can be requested.  Cumberland's medical director, who was also K.S.'s treating physician, requested such a conference on April 24,

2017, but the request was denied as having already occurred between BCBSLA's CMO and Dr. Nabrit-Stephens, neither of whom have ever evaluated, treated or even seen K.S.  Dr. Nabrit-Stephens is a pediatrician but the qualifications of the BCBSLA CMO were not disclosed. However, BCBSLA has not provided the credentials of either of these physicians nor shown their expertise with or even familiarity with K.S.'s conditions within 30 days of written request by the Plaintiffs.

31.

On or about June 15, 2017, Plaintiffs appealed the BCBSLA decision to deny further treatment as "medically unnecessary."  On June 23, 2017 BCBSLA upheld the appeal as to "medical necessity" because the ongoing treatment for K.S. was considered on appeal by BCBSLA to be medically necessary.  BCBSLA then asserted, in response to an administrative appeal of the denial, and for the first time after almost 15 months of medically necessary treatment, that a policy exclusion for "Custodial Care" would now apply to deny further inpatient treatment for K.S. This use of this exclusion in the new denial of treatment was backdated with an effective date of denial of April 19, 2017.  The exclusion had not been previously asserted in the denial of April 18, 2017 but was used to change the reason for denial, after the fact.

32.

This June 23, 2017 denial of authorization for continued medically necessary inpatient treatment for K.S. is not based in fact and does not follow the internal guidelines of BCBSLA or its policy or the required ERISA full and fair review and is therefore evidence of arbitrary and capricious behavior. Further, the use of a policy exception to backdate a denial is arbitrary, capricious and unreasonable. Further, the use of this Exclusion violates Louisiana and Federal Health Care

12

statutes regarding Custodial Care. Thus, this BCBSLA process does not substantially comply with ERISA's stated procedures.

33.

Because of BCBSLA's arbitrary, capricious, and unreasonable denial of authorization for continued inpatient treatment, K.S. has been damaged in her mind and body, including increased symptoms, anxiety, depression, increased disability, past and future loss of enjoyment of life, past and future mental and physical pain and suffering, increased medical expenses, and other damages to be shown at trial of this matter. Plaintiffs Soileau and Kovach are damaged by BCBSLA's conduct to the extent that they have suffered pain and suffering, loss of enjoyment of life, loss of earnings and or loss of use of funds which had to be used to cover the obligations of BCBSLA and then wait on reimbursement, and other damages to be shown at trial on the merits of this matter.

34.

Plaintiffs and K.S. were injured, in whole or in part, through the fault of defendant BCBSLA, its agents, or employees, or others, for whom same are legally responsible, by virtue of the doctrine of respondeat superior, including alleged independent contractors, such as Health Integrated, retained by BCBSLA to discharge its obligations under the contract of insurance at issue herein.

### POLICY PROVISIONS AND BCBSLA'S UNREASONABLE PAYMENT SCHEME

35.

At all times relevant hereto, Soileau & Associates, LLC had in effect a policy of medical and hospitalization coverage through BCBSLA, Group No. 27R71ERC and Contract No. 200722509 (hereinafter 'the Policy'), which provided coverage to K.S.

36.

The Policy issued to Soileau & Associates, LLC is a health insurance policy, rather than an indemnity policy, that provides coverage for K.S.'s claims.  Nothing in this insurance policy requires the Plaintiffs to pre-pay the provider or hospital for the services approved by BCBSLA. BCBSLA has nevertheless required Plaintiffs to pay for K.S.'s treatment directly to Cumberland and then request reimbursement from BCBSLA.  BCBSLA has insisted that Cumberland bill its sister company, BCBS of Virginia, for the services, which Cumberland did on a regular basis. However, this requirement forced Plaintiffs to fully fund the inpatient treatment and then to request reimbursements which BCBSLA delayed and then denied.  Further, BCBSLA has damaged Plaintiff's by shirking its fiduciary obligations to the Plan participants by actually negotiating a day rate that was higher than the $1,050.00 per day rate negotiated by Plaintiffs with Cumberland Hospital.  Thus, not only did Plaintiffs have to pre-pay BCBSLA's obligations to Cumberland Hospital, but they were forced to pay a higher rate at BCBSLA's insistence. Plaintiffs should have been about to rely on the Plan provisions regarding payments.  To their detriment, the Plan Participants undertook the advance payments as instructed by BCBSLA in order to get the medically necessary treatment for their daughter only to later have the Plan administrators change their minds and deny Coverage and payment after the treatment had already been provided.

37.

To date, as required by BCBSLA, even though the actual policy and contract between the parties does not state anywhere in it that prepayment of preauthorized services is required, Plaintiffs have been forced by BCBSLA to prepay all charges to Cumberland at the agreed rate (agreed to and negotiated by BCBSLA and Cumberland without any input from Plaintiffs) of $1,192.00 per day

due to the urgent need for treatment.  This prepayment was the only way for K.S. to receive treatment because BCBSLA refused to pay Cumberland directly in spite of the agreement it negotiated with Cumberland.

38.

BCBSLA owed Plaintiffs a fiduciary duty under the ERISA and applicable state law.  In placing K.S. at Cumberland, Plaintiffs negotiated a daily rate of $1,050.00 for her inpatient care.  BCBSLA informed Cumberland and Plaintiffs that it would negotiate the daily rate, which it set at $1,192.00. BCBSLA thereafter required, against policy provisions, that Plaintiffs prepay this higher rate and failed to timely reimburse Plaintiffs, as described, supra.   BCBSLA subsequently denied reimbursement arbitrarily altogether, as also described supra.  BCBSLA's negotiation of a higher daily rate than Plaintiffs would have otherwise been required to pay, which it then required Plaintiffs to prepay with reimbursement or simply to pay without reimbursement, constitutes a breach of the fiduciary duty to Plaintiffs.

39.

The policy at issue herein constitutes an employee welfare benefit Plan within the meaning of ERISA, 29 U.S.C. §1002(A)(1) pursuant to the Order of the court denying Plaintiff's Motion to Remand (Doc. 22).  Plaintiffs reserve their right to appeal this decision and Order at an appropriate time.  BCBSLA is the insurer and de facto claims administrator of the Plan.  In its capacity of such, it is a fiduciary of the Plan and owes a fiduciary duty to all participates of the Plan when administrating claims. BCBSLA breached its fiduciary duties by forcing Plaintiffs to pay sums that it should have paid pursuant to the terms of the policy.

40.

Comprehensive Major Medical Benefit Plan Contract No. 200722509 is an insurance policy which specifically calls for a non-network deductible during each benefit period of individual ($2,600.00) and family ($5,200.00). Out-of-pocket amounts payable by Subscriber, which include deductible amount and all eligible co-insurance amounts, are capped at $7,000.00 for an individual for non-network providers for each benefit period. Nothing in this Insurance Policy requires the Subscriber to prepay with the provider or hospital for the services approved by BC/BSLA. The Plan is accordingly an insurance policy, and not an indemnity policy. Notwithstanding these provisions, BCBSLA asserted an entitlement to reduce Plaintiff's reimbursements on three separate occasions for deductibles and co-payments, even after advising the Louisiana Insurance Commissioner's office that it would not take a deductible.

41.

According to the Schedule of Benefits as stated in Blue Cross/Blue Shield Form No. 97176EX-037 R01/15, mental health benefits are payable the same as any other illness. Inpatient admissions must be authorized and authorization must be requested prior to a service being rendered. If the service or supply is medically necessary, benefits are provided based on the participating status of the provider of the service.

42.

The policy contains in Article XVIII, Care Management, the following applicable language:

Part 1.A. Authorization of Admissions, Services and Supplies, Selection of Provider, and Penalties. In pertinent part, this section reads as follows: A Member may generally obtain medical care from any Provider. Benefits will be paid at the highest Network level when

care is received from a Network Provider. Participating and Non-Participating Providers are Non-Network Providers.

> a)      If a Member wants to receive services from a Non-Network Provider and obtain the highest level of Benefits, he must notify Our Care Management Department before services are rendered. We will approve the use of a Non-Network Provider only if we determine the services cannot be provided by a Network Provider within a seventy-five (75) mile radius of the Member's home.

We must approve the use of the Non-Network Provider and issue any required Authorization before services are rendered.

43.

Under Article V. of the contract, Hospital Benefits, the contract requires all admissions to be authorized as outlined in Care Management (previously discussed above). Article V. goes on to state:

The following services furnished to a member by a hospital are covered:

A) Inpatient bed, Board, and General Nursing Service;

> 1) Hospital room and board and general nursing services […]

> 4) In a Residential Treatment Center for Members with Mental Health, substance abuse Benefits.

B) Other Hospital Services (Inpatient and Outpatient) […]

> 2) Drugs and medicines including take-home Prescription Drugs […]

> 6) Diagnostic Services rendered by a Hospital employee […]

>  8) Psychological testing ordered by the attending Physician and performed by a

17

Hospital employee.

44.

Under Article IX., Mental Health Benefits, the Plan states that treatment of mental health is covered and, furthermore, that inpatient treatment for mental health must be authorized as provided in the Care Management Article of this Benefit Plan (previously discussed).  Further, the policy calls for treatment for children with Autism, which is one of K.S.'s diagnoses.

### REIMBURSEMENT DELAYS

45.

BCBSLA has repeatedly delayed reimbursing Plaintiffs. A first request for reimbursement for the period from April 8, 2016 through June 30, 2016 was submitted to BCBSLA on or about September 2, 2016.  A second Request for reimbursement for the period July 1, 2016 through September 30, 2016 was mailed to BCBSLA on or about October 24, 2016.  A third Request for Reimbursement for the period October 1, 2016 through November 30, 2016 was sent on December 19, 2016. Almost eight months after K.S. was admitted to Cumberland, on January 6, 2017, BCBSLA finally issued a check for reimbursement to Plaintiffs.  This check was supposed to reimburse Plaintiffs for payments to Cumberland for K.S.'s treatment from April 8, 2016 through October 31, 2016.

46.

This reimbursement was untimely under the policy provisions and also under the safe harbor provisions allowed in ERISA, it was also untimely pursuant to LSA-R.S. 22: 1821(A), as it was over 30 days in processing for each claim.  Further, the amount reimbursed was wrong and incalculable from the EOB that was issued on January 9, 2017.   Further, to date, BCBSLA has

not responded to the Plan participants' written request to the Plan administrator for the specific calculations and criteria claimed and used in making the reimbursements

47.

On February 1, 2017, BCBSLA sent a second check. In a following letter dated February 3, 2016 and an EOB, BCBSLA attempted to explain that it had withheld a deductible from the first payment, but then decided that since there are no treatment facilities for K.S. within Louisiana, it was waiving this deductible.

48.

A fourth request for reimbursement for K.S.'s inpatient stay, covering the period November 1, 2016 through December 31, 2016, was submitted to BCBSLA on February 17, 2017.  The period November 1, 2016 through November 30, 2016 had already been submitted to BCBSLA on December 19, 2016 but no response was received so it was resubmitted on February 17, 2017 with the request for December 1-31, 2016.

49.

A fifth request for reimbursement covering the period January 1, 2017 through February 28, 2017 was submitted to BCBSLA on March 13, 2017.

50.

On April 26, 2017, BCBSLA finally responded to these requests for reimbursement by sending a check for reimbursement.  An EOB to explain this reimbursement check was sent on May 2, 2017. In this EOB, BCBSLA attempted to explain its adjusting of the claim. The adjusting of these reimbursement claims again took over 30 days to complete and was inaccurate.  In the EOB, BCBSLA claimed an additional deductible of $5,200.00 and an additional charge of $728.77 as

19

coinsurance, even though it had previously waived deductibles and no co-insurance is due under the terms of this policy.  Thus, this accounting and adjusting was incorrect.

51.

On February 3, 2017, BCBSLA itself advised Plaintiffs that no deductible was being collected because K.S. had to seek services out of state due to the fact that there are no appropriate facilities within Louisiana for her to get treatment.  The amount to be reimbursed to Plaintiffs is easily calculated. An incorrect amount was nevertheless paid in excess of 30 days after demand was made on BCBSLA.

52.

A sixth request for reimbursement covering the period from March 1, 2017 through March 31, 2017 was sent to BCBSLA on or about April 24, 2017.  BCBSLA responded to Plaintiffs' request over 30 days later on May 29, 2017 with a reimbursement, which was again an incorrect amount.

53.

A seventh request for reimbursement covering the period April 1, 2017 through April 30, 2017 was sent to BCBSLA on June 22, 2017.  This claim had previously been sent to BCBSLA through its agent, Blue Cross Blue Shield of Virginia by Cumberland as it has done for each month of this claim.  Plaintiffs paid Cumberland for inpatient treatment and services rendered to K.S. from April 1, 2017 through April 18, 2017 (18 days of paid medical treatment and services which was authorized by BCBSLA as medically necessary).  Plaintiffs also sought reimbursement for the period of April 19 through April 30, 2017 or an additional 12 days paid by Plaintiffs to Cumberland.  This claim has not been paid.

54.

An eighth request for reimbursement was sent by Plaintiffs to BCBSLA on September 27, 2017. This request again covered the period of inpatient treatment at Cumberland from April 1, 2017 through April 18, 2017, which has not been adjusted by BCBSLA.  It also now covered the period April 19, 2017 through June 23, 2017, which period should have been authorized as BCBSLA admitted that the inpatient treatment of K.S. at Cumberland was medically necessary but then, on administrative appeal, retroactively applied a policy exception of Custodial Care to continue to deny benefits.  Finally, this request also covered the period June 24, 2017 through August 31, 2017.  To date, BCBSLA has ignored these requests.

55.

A ninth request for reimbursement was sent by Plaintiffs to BCBSLA on December 15, 2017.  This request covered the medically necessary inpatient treatment of K.S. at Cumberland Hospital from September 1, 2017 through November 30, 2017.  No response has been had from BCBSLA.

56.

Neither BCBSLA nor any of its agents have provided any of the supposed criteria on which they based their several denials in this matter, even though the entire claim file and all decisions and information supporting said decisions was requested as part of each appeal and reimbursement request sent by US Postal Service Certified Mails to the Plan administrators at BCBSLA by Plaintiffs.  Thus, BCBSLA failed to respond within 30 days of written request for the above referenced information.

57.

BCBSLA's denial of authorization for in-patient care at Cumberland Hospital demonstrates its

conflict of interest in the handling of this claim, insofar as it had previously approved inpatient treatment and has provided no reason for the delayed denial other than a policy exclusion that is inapplicable to K.S.'s claim. BCBSLA's conflict of interest is shown by the fact that the same person or entity responsible for evaluating the claim is also the person or entity responsible for paying the claim. This ultimately results and did result in a financially motivated decision to terminate benefits that the Plan participant is entitled to receive. This constitutes a breach of their fiduciary duty and a failure to provide a full and fair review of the claim.

58.

BCBSLA and/or their respective agents have violated the provisions of the Plan and Health Insurance Policy, the provisions of ERISA, and the laws of Louisiana and have breached the contract of health insurance it made with Plaintiffs herein in the following specific ways:

a.) By failing to timely accept the claims for treatment forcing Plaintiffs into repeated and time consuming Appeals and delaying the medically necessary treatment for K.S.;

b.) By failing to assist or communicate with Plaintiffs and/or K.S.'s treating physicians or other medical providers such as Cumberland Hospital personnel regarding authorizations for treatment and/or the claims and/or the denials;

c.) By making arbitrary and capricious decisions that were not based in facts or the terms and conditions of the insurance contract as clearly stated in policy language which resulted in repeated denials for service and deterioration of K.S.'s medical condition as well as delaying her treatment at Cumberland Hospital;

d.) By failing to correctly and timely process the Plaintiff's claims for services and/or reimbursement of payments;

e.) By insisting that Plaintiffs directly prepay Cumberland Hospital for the authorized, covered and medically necessary inpatient treatment at Cumberland in violation of the contract provisions;

f.) By failing to authorize treatment and/or to pay for the medically necessary inpatient treatment at Cumberland Hospital;

g.) By failing to timely reimburse Plaintiffs for the moneys they paid to Cumberland Hospital;

h.) By failing to pay for travel to Cumberland Hospital when K.S. was admitted for treatment;

i.) By failing to pay interest on the moneys Plaintiffs were forced to advance to Cumberland Hospital for the medically necessary treatment of K.S.;

j.) By incorrectly calculating deductibles and copayments;

k.) By failing to provide accurate Explanation of Benefits and incorrectly advising other medical providers on the amount of deductible still owed by Plaintiffs;

l.) By failing to provide copies of the claims file and all criteria, documents and materials used in making any determinations of coverage in this matter within 30 days of a written request to the Plan administrator;

m.) By use of an inapplicable exception on administrative appeal to retroactively deny benefits for treatment at Cumberland Hospital;

n.) By bad faith adjusting of the claims;

o.) By failing to honor the provisions of the policy it sold to Plaintiffs as well as the provisions of ERISA and the laws of Louisiana such that it favored its own financial needs over the needs of its insured; and

p.) All other regulatory and statutory violations that may be shown at trial on the merits of this matter.

59.

As a result of their actions, inactions, and breaches of their duties, BCBSLA and/or their respective agents have damaged Plaintiffs in the following non-exclusive ways:

a.) K.S.'s treatment has been delayed resulting in a worsening and deteriorated conditions;

b.) K.S. has suffered additional depression, loss of hope and the enjoyment of life;

c.) Plaintiffs Isaac H. Soileau, Jr., Karen S. Kovach, and K.S., have been deprived of the daily enjoyment, love, and affection involved in a parent-child relationship, and K.S. has been deprived of the guidance that her parents could have provided;

d.) K.S. has lost the opportunity to receive education and the opportunity for socialization in a timely manner with her peers and in her community;

e.) Plaintiffs have had to bear the cost of this inpatient treatment for which they contracted with BCBSLA for insurance only to find that BCBSLA would not honor its contract in a timely and appropriate manner in accordance with contract law or insurance law;

f.) Plaintiffs have had to spend excessive amounts of time trying to communicate with BCBSLA for assistance in this claim, to no avail, resulting in their loss of revenue from not being able to participate in their own businesses;

g.) Plaintiffs have lost funds that were not fully and timely reimbursed and or had to pay penalties for funds taken from other accounts to be used to pay for this treatment that was properly the obligation of BCBSLA to pay;

h.) Plaintiffs have not been properly reimbursed for the claims and required transportation;

24

i.) Plaintiffs Soileau and Kovach have sustained pain and suffering, loss of enjoyment of life, loss of earnings, and other damages (including deleterious health effects) arising out of the affliction of their daughter, K.S by defendant in this matter;

j.) Plaintiffs have not received interest on monies that were utilized to pre-pay K.S.'s medical expenses per BCBSLA;

k.) Plaintiffs have suffered the inconvenience and anxiety of finding alternative sources of funding their daughter's medically necessary treatment that is not being paid for by BCBSLA pursuant to its policy of health insurance, including requesting, proving the entitlement to and managing the payment or reimbursement of medical bills and services either through loans or by Louisiana Medicaid, through its agent, United Health Care Community Plan.;

l.) Plaintiffs have suffered the inconvenience and anxiety of managing liens for payment of medical bills by creditors, including Medicaid, through its agent, United Health Care Community Plan, because of defendant's arbitrary, capricious and willful failure to pay for the medically necessary treatment of K.S.;

m.) Plaintiffs had have had adverse tax effects to the extent that untimely reimbursements have caused the U.S. Internal Revenue Service to examine the untimely reimbursements as potential income because large reimbursements have occurred in years other than the years in which payments to be reimbursed occurred; and

n.) All other legal damages that may be shown at trial on the merits of this matter.

60.

On information and belief, the actions and omissions of BCBSLA and/or their respective agents

described herein are part of their individual and collective cultures of misinformation and bad faith adjusting, which have afflicted and affected other policy holders in similar ways and for which BCBSLA should be made to answer to all. Though Plaintiffs have only commenced to gather information and investigate their claim, it is apparent that BCBSLA has an internal operating policy that afflicts all similarly situated persons.  Plaintiffs thus reserve the right to qualify this petition as a class action on behalf of other potential victims.

61.

All administrative procedures have been exhausted.  K. S. timely appealed the denial of benefits. BCBSLA has not meaningfully responded to plaintiff's appeals and demands.

62.

BCBSLA has acted as both Plan administrator and insurer in this matter.

63.

BCBSLA has acted contrary to its Plan provisions and without reasonable justification in making decisions and changing its decisions, including terminating plaintiff's inpatient treatment medical benefits.  BCBSLA's actions have been in bad faith and in abuse of its discretion as administrator of the Plan.  BCBSLA has failed or refused to properly and adequately review plaintiff's medical information. Therefore, BCBSLA failed to provide full and fair review of Plaintiffs' claims.

64.

BCBSLA, without reasonable justification, and in abuse of its discretion and in flagrant disregard of the clear language of the Plan has changed its determination on an administrative appeal concerning plaintiff's entitlement to medically necessary inpatient treatment and medical benefits and has now refused to grant plaintiff the benefits to which she is entitled under the Plan.

65.

BCBSLA, in violation of the ERISA standards, has failed to provide documents including the administrative record within 30 days of written request to the Plan administrator.  The Plan criteria and definitions and BCBSLA's rationale for decision making as well as all internal records regarding who was involved in the decision and all documents created or used in making decisions in this claim was first requested by the Plaintiffs in March, 2016. Written requests for the decision rationale and criteria used in making decisions was requested in writing by Plaintiffs in every appeal or request for reimbursement submitted to BCBSLA, the Plan administrator.   To date, this information has not been provided.

66.

Plaintiffs assert that ERISA is unconstitutional as applied to healthcare insurance policies insofar as it impairs the power of the District Court to conduct impartial, plenary, and de novo proceedings on the merits by delegating adjudication to a private litigant through the granting of deference to insurance carriers; infringes plaintiffs' Seventh Amendment right to a jury trial in a civil matter by improperly employing summary procedure that is not authorized by ERISA itself or the Federal Rules of Civil Procedure; and improperly derogates from plaintiffs' ancient rights to contract and tort remedies.

## CAUSE OF ACTION NO. 1

67.

Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-66 as if written hereunder *in extenso*.

68.

BCBSLA's refusal to continue benefits and its improper termination of benefits under the Plan for plaintiff's medical treatment is in violation of both ERISA law and the underlying provisions of the Plan.  Plaintiff avers that BCBSLA has abused its discretion in denying benefits and has done so without reasonable justification.

69.

Pursuant to § 502(a)(1)(B) of the ERISA, plaintiff is entitled to recover benefits due to her under the Plan regarding her past medical treatment at Cumberland, including prejudgment interest, as defendants have failed to substantially comply with the ERISA and its procedure and have failed to comply substantially with the terms of the insurance policy between the parties.

### CAUSE OF ACTION NO. 2

70.

Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-69 as if written hereunder *in extenso*.

71.

Because plaintiff K.S. requires continuing medical treatment for the foreseeable future, defendant BCBSLA's improper termination aforesaid has interfered with her rights under the terms of the insurance policy between the parties, in violation of the policy and ERISA.

72.

Plaintiffs accordingly seek all equitable relief and declaratory relief for future benefits under the Plan available under § 502(a)(3) of the ERISA, including an injunction ordering defendant to provide benefits in accordance with the recommendations of the treating physicians.

28

**C**AUSE OF **A**CTION **N**O. **3**

73.

Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-72 as if written hereunder *in extenso*.

74.

Under 29 U.S.C. § 1102(21)(a) defendant BCBSLA is a fiduciary with respect to the Plan when it exercises discretionary control respecting management of the Plan with regard to benefit claims. Defendant is a fiduciary when it has discretionary authority or responsibility in the administration of the Plan.

75.

As a fiduciary of Plaintiffs, defendant owes a fiduciary duty to Plaintiffs as the administrator of benefits under the Plan including benefits claimed by Plaintiffs.  Plaintiffs are Plan Participants pursuant to the language of the Plan

76.

BCBSLA breached its fiduciary duty to Plaintiffs herein in violation of § 502(a)(2) of the ERISA, which breach has damaged Plaintiffs, as described, supra.  Plaintiffs accordingly seek all damages warranted in the premises for the breach of duty, including damages for defendant's negotiation of a higher daily rate than what Plaintiffs had already negotiated with Cumberland.

**C**AUSE OF **A**CTION **N**O. **4**

77.

Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-76 as if written hereunder *in extenso*.

78.

Despite numerous requests for Plan and claim documents, defendant BCBSLA has declined to provide Plaintiffs with the documents that are owed under the ERISA, which failure to provide has interfered with Plaintiffs' exercise of their rights and has impaired the health care of K.S.

79.

BCBSLA has accordingly breached its obligation under § 502(c)(1) of the ERISA to provide such documents within 30 days of written request to the Plan administrator. Plaintiffs seek all available penalties available under the ERISA for this breach of duty, which has prejudiced Plaintiffs' ability to enforce their rights under the policy of insurance. Plaintiffs also seek injunctive relief under § 502(a)(3), ordering defendant to deliver the requested documents to Plaintiffs.  Plaintiffs furthermore seek an award of medical and general damages as a § 502(c)(1) penalty, insofar as the defendant's delay has made K.S.'s medical condition worsen.

### CAUSE OF ACTION NO. 5

80.

Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-79 as if written hereunder *in extenso*.

81.

Defendant BCBSLA has misrepresented Plan provisions and its intentions regarding the medical care of K.S. to Plaintiffs, Plaintiffs' medical providers, and to third parties.

82.

Plaintiffs have reasonably relied on these misrepresentations, to their detriment.

83.

Defendant is accordingly estopped from denying claims pursuant to § 502(a)(3) of the ERISA, and is liable to Plaintiffs for the sums expended by Plaintiffs in reliance upon the misrepresentations aforesaid.

**CAUSE OF ACTION NO. 6**

84.

Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-83 as if written hereunder *in extenso*.

85.

Defendant BCBSLA failed to provide Plaintiffs a full and fair review of their claims for benefits, abusing its discretion thereupon, adjusted the claims arbitrarily and capriciously, and/or have not substantially complied with ERISA procedures, insofar as it has afforded deference to initial adverse benefit determinations, has had the same person conduct appeals of initial determinations, has failed to consult with health care professionals who have appropriate training and experience for the making of medical judgments, has failed to identify medical experts whose advice was consulted regarding the claim, has consulted the same health care professional in appeals as in initial determinations, has failed to provide the evidence on which adverse determinations on administrative appeal have been based, has arbitrarily changed the reasons for adverse benefit determinations on appeal, has not examined K.S. physically and personally even though the policy allows and the medical diagnoses require such examination, engaged in conflicts of interest that has resulted in harm to Plaintiffs, and other procedural violations under the ERISA, which in part or taken as an aggregate constitute flagrant procedural violations.

86.

On account of these procedural violations, Plaintiffs seek all relief available for same under the ERISA, including without limitation a de novo standard of review, the striking of defendant's evidence and defenses, and the reinstatement of benefits so as to return K.S. to the status quo ante.

**CAUSE OF ACTION NO. 7**

87.

Plaintiff incorporates by reference all of the above allegations in paragraphs 1-86 as if written hereunder *in extenso*.

88.

Defendant through its conduct has breached the contract with Plaintiffs, has committed negligent acts, has committed bad faith claims handling, has breached its fiduciary duty, has been unjustly enriched, has committed civil conspiracy, and has tortuously interfered with the contract between the parties, and other violations of applicable state law, as described supra, for which Plaintiffs are entitled to recover.

89.

For these violations of the laws of the State of Louisiana, Plaintiffs seek all damages warranted in the premises.

**CAUSE OF ACTION NO. 8**

90.

Plaintiffs incorporate by reference all of the above allegations in paragraphs 1-89 as if written hereunder *in extenso*.

91.

Plaintiffs submit that the ERISA is unconstitutional as applied insofar as it impairs the power of the District Court to conduct impartial, plenary, and de novo proceedings on the merits by delegating adjudication to a private litigant through the granting of deference to insurance carriers; infringes plaintiffs' Seventh Amendment right to a jury trial in a civil matter by improperly employing summary procedure that is not authorized by the ERISA itself or the Federal Rules of Civil Procedure; and improperly derogates from plaintiffs' ancient rights to contract and tort remedies.

92.

Plaintiffs seek an order of this Court that holds summary proceedings and deference to the plan administrator unconstitutional.

## JURY DEMAND

93.

A jury trial is hereby requested in this matter.

94.

Plaintiffs reserve the right to amend and or supplement this Complaint with additional facts and or claims as they are uncovered or occur.

## CONCLUSION & PRAYER FOR RELIEF

WHEREFORE Plaintiffs request the following relief insofar as they ask the Court to:

1. Order the defendants to pay benefits for the Plan and Policy participants properly according to the terms of the Plan and policy, including inpatient or residential treatment in accordance with the recommendations of the

33

physicians who are treating K.S.;

2.   Declare that the terms of the Plan do not require pre-payment by Plaintiffs and that the insurance policy is not a policy of indemnity;

3.   Order that defendants are obligated to reimburse Plaintiffs for medically necessary expenses paid to Cumberland Hospital and other medical providers of K.S.;

4.   Order the defendants to cease and desist their violations of the Plan and policy, as well as the provisions of the ERISA, and all applicable state law;

5.   Award to Plaintiffs the full penalty permitted under § 502(c)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act;

6.   Award to Plaintiffs all penalties (as adjusted by the Federal Civil Penalties Inflation Adjustment Act) warranted under the ERISA as well as attorney fees, costs, and expenses in connection with and prosecution of this action;

7.   Award to Plaintiffs all damages warranted under the premises of their state law claims;

8.   Find that due to the flagrant procedural violations of the Plan and policy by BCBSLA without a colorable claim for upholding denial of benefits, and because K.S. is clearly entitled to benefits under the Plan Policy, the matter must be determined by the court and not remanded to the Plan administrator;

9.   Award to Plaintiffs interest on all exigible sums; and

10.  Grant all other equitable relief and reasonable damages including prejudgment interest that this Honorable Court deems proper and a penalty

34

under the provisions of section 502 (c) (1) of the ERISA statutes.

Respectfully submitted,

s/ *Ryan A. Jurkovic*_____
Isaac H. Soileau, Jr. (LSBA No. 21384)
soileauih@aol.com
Karen S. Kovach (LSBA No. 26365)
kskovach@aol.com
Ryan A. Jurkovic (LSBA No. 31384)
rjurkovic@soileaulegal.com
1010 Common Street, Suite 2910
New Orleans, Louisiana 70112
504 522 5900 / 504 522 5998 (fax)

James E. Cazalot, Jr. (LSBA No. 17510)
jim@cazalotlaw.com
JAMES E. CAZALOT, JR., APLC
209 Highway 22 West, Suite G
Madisonville, Louisiana 70447
985 792 5220 / 985 792 4889 (fax)

Attorneys for Plaintiffs, SOILEAU & ASSOCIATES, LLC, by and through its members, ISAAC H. SOILEAU JR. and KAREN S. KOVACH, appearing also herein individually and on behalf of K.S., a minor child