UNITED STATES DISTRICT COURT
Eastern District of Louisiana

| | | | |
|---|---|---|---|
| SOILEAU & ASSOCIATES, LLC, through and by its members, ISAAC H. SOILEAU JR. and KAREN S. KOVACH, also appearing herein individually and on behalf of K.S., a minor child | * | Civil Action | No. 18-710 |
| | * | c/w | No. 18-7613 |
| | * | | |
| Plaintiffs | * | | |
| versus | * | Sec: G | Div: 3 |
| | * | | |
| | * | Judge: | Brown |
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY d/b/a Blue Cross & Blue Shield of Louisiana, et al. | * | Magistrate: | Knowles |
| | * | | |
| Defendants | * | | |
| *    *    *    *    *    *    *    * | | Jury Demand | |

## SECOND AMENDING & SUPPLEMENTAL COMPLAINT

NOW INTO COURT, come SOILEAU & ASSOCIATES, LLC, by and through its members, ISAAC H. SOILEAU JR. and KAREN S. KOVACH, appearing also herein individually and on behalf of K.S., a minor child, all of whom are beneficiaries of a policy of health insurance issued by defendant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross & Blue Shield of Louisiana (hereinafter "BCBSLA"), and aver upon information and belief as follows:

1. Plaintiffs are Plan participants and beneficiaries of an insurance contract with BCBSLA, and bring these claims on their own behalf and on behalf of their daughter, K.S.

2. Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., to the extent it is applicable, seeking to overturn arbitrary, capricious and unreasonable decisions by BCBSLA and/or its agents, including

1

New Directions Behavioral Health, LLC (hereinafter 'New Directions'), as Plan, Plan Administrator, claims administrator and/or an administrator under the respective policies, regarding reimbursement claims, claims for benefits, claims for treatment for K.S., and for defendant's denying claims for health insurance benefits, and seeking further to obtain other relief under the provisions of ERISA, the Patient Protection and Affordable Care Act, the federal common law, and applicable state law.

3. Plaintiffs likewise bring this action under state law claims for negligence and breach of contract, bad faith claims handling, negligence, breach of fiduciary duty, and unjust enrichment, among others.

**JURISDICTION AND VENUE**

4. Jurisdiction is invoked herein pursuant to 28 U.S.C. § 1331.  Further, this action includes an ERISA claim within the meaning of ERISA Sections 502 and 503, as well as claims arising under the U.S. Constitution.  Thus, this court has jurisdiction pursuant to ERISA's Section 502(e)(1) (29 U.S.C. §1132(e)(1)).

5. The court has supplemental jurisdiction over state law claims that arise out of the same common nucleus of operative fact as the ERISA claim, supra, 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is a district in which a substantial part of the events or omissions giving rise to the claim occurred, including being the location where the Health Insurance Policy at issue was issued to the Plaintiffs and, in the alternative, at least one defendant is subject to the court's personal jurisdiction in this district.

## PARTIES

7.  Plaintiff K.S. herein is a minor child whose domicile is determined by her parent's domicile. Plaintiffs Isaac H. Soileau, Jr. and Karen S. Kovach are K.S.'s parents and are domiciled in and residents of St. Tammany Parish, State of Louisiana.   Therefore, at all times relevant herein K.S. was a domiciliary of Louisiana. However, at various times pertinent to this matter, K.S. was receiving inpatient treatment at Cumberland Hospital for Children and Adolescents (hereinafter 'Cumberland') in New Kent, Virginia, or Norris Academy in Norris, Tennessee (hereinafter 'Norris'), or Devereux Advanced Behavioral Health in Viera, Florida (hereinafter 'Devereux').

8.  Plaintiffs Soileau & Associates, LLC, Isaac H. Soileau, Jr., and Karen S. Kovach are and at all times relevant herein have been domiciliary of and residents in Louisiana. Isaac H. Soileau, Jr. and Karen S. Kovach are members of Soileau & Associates, LLC, a limited liability company licensed to do business in the State of Louisiana.

9.  Defendant BCBSLA is an insurance company doing business in the State of Louisiana and more specifically was the insurer and de facto administrator, agent, or contractor of a group health insurance policy issued to Plaintiffs for their benefit and for the benefit of their minor child.

10. Defendant New Directions Behavioral Health, LLC (hereinafter 'New Directions') is a foreign corporation, domiciliary of the State of Missouri, licensed to do and doing business in the State of Louisiana as a third party administrator for BCBSLA for certain claims submitted by plaintiffs pursuant to the policy of insurance at issue herein.

11. Defendant Health Integrated, Inc. (hereinafter 'Health Integrated') is a foreign corporation,

3

domiciliary of the State of Florida, licensed to do and doing business in the State of Louisiana as a third party administrator for BCBSLA for certain claims submitted by plaintiffs pursuant to the policy of insurance at issue herein.

12. Plaintiffs reserve the right to join any other Blue Cross & Blue Shield entity, subsidiary, agent, or contractor, as warranted.

### ALLEGATIONS OF FACT – K.S. MEDICAL CONDITIONS

13. Prior to her recent inpatient treatment, K.S. had been diagnosed with traumatic brain injury, fetal alcohol syndrome, autism, pervasive developmental delays, ADHD-severe, PTSD, anxiety, sensory disorders and several other neurological conditions by her treating physicians in Louisiana and also confirmed by an expert neuro-psychologist in Virginia and her treating doctors in Virginia, Tennessee, and Florida.

14. K.S. has received significant and extensive treatment for the diagnoses aforesaid and for other issues, including having been brought to various hospital emergency departments and or being involuntarily committed by physician emergency committal to psychiatric hospitals in Louisiana several times in 2012, 2013, 2014, 2015 and 2016, and one time in Virginia in 2017. On information and belief, these claims were paid by BCBSLA because they were medically necessary and the benefits were provided for in the provisions of the policy.

15. Toward the end of 2014, K.S. began a cycle of physician emergency committals which resulted in several hospital stays in Louisiana. On information and belief, BCBSLA processed and paid these claims as medically necessary. In November and December of 2014, K.S.'s condition became so unsafe by repeated elopements from home into dangerous situations, physical aggression, or property damage, requiring either police or ambulance

support and transport to hospital emergency departments, resulting in both parents essentially being required to stay with K.S. continuously, almost 24 hours a day.

16. K.S. was referred by several of her physicians for inpatient treatment to Cumberland—once in November 2013 and again in December 2014.  Cumberland is an inpatient hospital that treats children and adolescents who have traumatic brain injuries, autism/pervasive developmental delays and other medically related conditions.  Cumberland's doctors and staff are noted for their ability to confirm diagnoses as well as for finding correct pharmacological remedies to assist the patients.  Cumberland Hospital accepted K.S. for treatment on both occasions but BCBSLA failed to pre-authorize or approve the requested inpatient stay as medically necessary.   While denying the treatment as not medically necessary, BCBSLA did not provide any reasons, or criteria or evaluation methodology on which this denial was based.

17. After Plaintiffs appealed the December, 2014 denial of benefits, BCBSLA finally authorized inpatient treatment for K.S. on 6 January 2015 on the basis of several additional recommendations by some of K.S.'s other physicians. In its approval, BCBSLA accepted the inpatient treatment as medically necessary.

18. Plaintiffs traveled from their home in St. Tammany Parish, Louisiana to New Kent, Virginia with K.S. for K.S. to receive the required treatment.

19. K.S. was admitted to Cumberland for the medically necessary and pre-authorized inpatient treatment on January 7, 2015, which treatment lasted through August 11, 2015. During this inpatient stay, K.S. received both medical treatment to remove unneeded and unhelpful medications from her pharmacological regimen and behavior analysis that helped the

Cumberland medical staff determine which medications would be both safe and helpful. Once at Cumberland, and after her medicine was adjusted, Katherine's behaviors became less frequent. She also lost weight which helped with her depression and she was able to attend the hospital's school with results including a two level reading advancement. Without a secure medical setting, this process would have been impossible because without medications, counseling and 24 hour / 7 days a week structure as well as medical support to prevent regression, K.S. is often uncontrollable and a danger to herself and others. This process was time consuming and incomplete when BCBSLA denied further inpatient treatment on August 11, 2015.

20. In August 2015, BCBSLA arbitrarily and capriciously denied further authority for inpatient treatment stating that further treatment was not medically necessary in an inpatient setting, which forced Cumberland Hospital to prematurely discharge K.S. to home, as no step-down facility was available in Louisiana. BCBSLA was aware of the fact that no other step-down facility was available. This arbitrary and capricious denial of further treatment forced K.S. out of treatment before she was ready or able to reintegrate into her home and school environments. Thus, K.S.'s condition quickly deteriorated in both her home environment and in her school setting. In fact, the St. Tammany Parish School Board sued the parents to have K.S. permanently excluded from school due to her regression including aggression, being a danger to herself and others as well as her instability and erratic conditions. Other St. Tammany Parish school personnel either sued K.S.'s parents or filed criminal charges against K.S.

21. Before BCBSLA approved the 2015 stay as medically necessary, K.S.'s parents negotiated

with Cumberland's business office an all-inclusive day rate of $1,050.00 for her inpatient

stay.  However, BCBSLA rebuked its fiduciary duties to act in the best interest of the Plan

participants and instead demanded that they be allowed to negotiate the rate, which they then

proceeded to negotiate for an *increased* amount of $1,192.00 per day.

22. Still further, although the insurance policy does not require prepayment of approved services

and even though Blue Cross had directly negotiated the day rate, BCBSLA insisted that the

Parents pay Cumberland directly for the inpatient treatment aforesaid and then seek

reimbursement only after Cumberland had invoiced Blue Cross/Blue Shield of Virginia. The

invoices for treatment were submitted by Cumberland to BCBSVA timely, and Plaintiffs

made demand for reimbursement upon BCBSLA after the discharge of K.S., but BCBSLA

did not timely reimburse Plaintiffs within 30 days of the demand for same.

## MEDICAL NECESSITY

23. After her premature discharge from Cumberland and without required medical services,

K.S.'s condition deteriorated and she regressed in her behaviors, coping skills, and activities

of daily living which had been learned during her stay at Cumberland. She again became a

danger to herself and others.  This regression was seen on a daily basis and eventually

resulted in K.S. being placed on "Homebound" status by the St. Tammany Parish School

Board.

24. Due to the denial of additional medically necessary inpatient care, K.S.'s condition further

deteriorated with exhibited behaviors of elopements into unsafe situations as well as physical

aggression and property damage, most of which required additional interventions by St.

Tammany Parish Sheriffs and or EMS personnel to protect K.S. from herself or to protect

7

others or property. This erratic behavior resulted in continual voluntary emergency department admissions in St. Tammany Parish, as follows:

- St. Tammany Parish Hospital on August 20, 2015, September 22, 2015, September 28, 2015, and November 12, 2015;

- North Oaks Medical Center on December 11, 2015;

- Lakeview Hospital on January 22, 2016, February 2, 2016, February 10, 2016, February 21, 2016, February 29, 2016, March 17, 2016, March 20, 2016, and March 23, 2016.

25. Furthermore, K.S. was involuntarily hospitalized by physician emergency committals five times for "stabilization" in psychiatric facilities in Louisiana as a result of the hospital emergency department doctors determining that she was too unsafe for herself and therefore unable to immediately return home, as follows:

- Northlake Behavioral Hospital in Mandeville, Louisiana from February 11 through 17, 2016;

- Brentwood Psychiatric Hospital in Shreveport, Louisiana from February 21 through 28, 2016;

- An immediate return to Brentwood on February 29 through March 13, 2016;

- Acadia Vermillion Hospital, in Lafayette, Louisiana which only kept K.S. for a two-day stay from March 20 through 22, 2016;

- The final involuntary visit to Lakeview led to her being committed by coroner's emergency committal at Lakeview Hospital Emergency Department which commitment lasted for eight days in the emergency department because the hospital

8

could not locate an adequate secure treatment facility in Louisiana that would admit
her; and

- After the eight-day physician emergency committal stay in the Lakeside
  Emergency Department without any proper hygiene and without treatment or her
  correct medicines, K.S. was shipped by ambulance to Brentwood Hospital on
  March 30, 2016.  BCBSLA only authorized one day at Brentwood and K.S. was
  discharged home late on April 1, 2016.

26. However, during these stays, as before K.S.'s first admission to Cumberland, she was
constantly misdiagnosed by the physicians who would not accept the parents' observations
nor even the prior medical reports as proof.  As a result of these misdiagnoses, K.S. again
was subjected to changes in her medications and additional medications that were unhelpful
and did not stop her regression. During this crisis period, K.S. received massive doses of
inappropriate medications for invalid or incorrect diagnoses and suffered from being
chemically restrained and battered by other patients.

27. K.S.'s parents sought readmission to Cumberland and the hospital agreed to readmit her.
However, BCBSLA denied pre-authorization of the inpatient stay by use of an out of state
contracted "Medical Review" organization.   This BCBSLA contractor or agent, Health
Integrated, is a Tampa Florida organization, which, on information and belief, appears to
merely provide doctors for hire by insurance companies to review and deny requests for
services.  This denial was sent to the parents on March 14, 2016 but was not signed nor was
the reviewer's identity disclosed.  Further, the medical review firm did not see or personally
evaluate K.S. before issuing its report.  BCBSLA failed to provide to the Plan participants

any method of evaluation, criteria or reasons within 30 days of written request by Plaintiffs to BCBSLA for this information.

28. The denial was appealed to BCBSLA, and a complaint was also lodged with the Louisiana Insurance Commissioner's office. BCBSLA chose to respond only to the Insurance Commissioner's investigator that the request for treatment would be approved as medically necessary and K.S. was thereafter authorized to return to Cumberland for treatment in April 2016.

### RECENT INPATIENT TREATMENT

29. Plaintiffs again travelled to New Kent, Virginia for the purpose of obtaining the medically necessary treatment for K.S. at Cumberland. Cumberland re-admitted K.S. for inpatient care on April 8, 2016. This second inpatient stay for care was far more difficult due to the arbitrary truncating by BCBSLA of K.S.'s prior inpatient stay at Cumberland in August of 2015. Cumberland again undertook to review and correct the pharmacological regimen for K.S. that had been altered inappropriately by the psychiatric hospitals during her involuntary committals. Cumberland also undertook to assist K.S. in developing adequate coping skills during her stay and provided 24 hour / 7days a week care and structure in a secure setting to prevent additional danger from elopements. Cumberland presented a treatment Plan to BCBSLA and held biweekly treatment team meetings to update this Plan. All of the Treatment Team Plans were regularly sent to BCBSLA by Cumberland and also by Plaintiffs. At no point during this stay did any BCBSLA personnel, either doctor or nurse, participate in any of the treatment team meetings. Therefore, BCBSLA only knew what was on the treatment team reports.

30. The medical reports and Treatment Plans showed the need for ongoing inpatient treatment in a secure facility that could provide the support and accommodations that K.S. needed. K.S.'s treatment in 2016 was difficult due to her regression after her first stay.  Further, she had to again be weaned off of the drugs she was on in a controlled secure setting and through behavior analysis a new pharmacological plan was created.  At this stay, Cumberland also found that there is a hormonal overlay to K.S.'s condition that should be addressed. However, Cumberland was unable to accomplish this for several reasons, including K.S.'s increased agitation and regression, increased elopement attempts, severe depression and withdrawal from efforts to continue her education. Cumberland's experienced staff provided pharmacological support as well as appropriate structure, therapy, and training in life skills which are extremely important to K.S. and others with similar diagnoses.  Cumberland provided treatment for K.S. with BCBSLA authorizations that indicated BCBSLA's agreement that the inpatient treatment was medically necessary from April 8, 2016 until April 18, 2017. At that point, BCBSLA chose to again stop authorizing treatment because BCBSLA now claimed that inpatient treatment was no longer medically necessary.

31. K.S. continued to treat at Cumberland with the plaintiffs paying the bills for inpatient treatment and submitting appeals and requests for reimbursement to BCBSLA.  K.S. stopped treating inpatient at Cumberland and was discharged on February 21, 2018 and, as recommended by her treating physician at Cumberland, Dr. Daniel Davidow, she was admitted on February 22, 2018 to Norris, a secure residential treatment facility in Norris, Tennessee, to continue her treatment.  Plaintiffs asked BCBSLA for pre-authorization for this treatment on February 16, 2018 but received no response.  Norris also sought

11

authorization from BCBSLA on February 21 and 22, 2018, and was told that BCBSLA would not authorize this treatment to a step down facility.

32. Plaintiffs hereby make demand for authorization of treatment and payment for same as well as for all penalties associated with any additional payments for treatment by Plaintiffs that BCBSLA failed to make or reimburse to Plaintiffs within 30 days of the demand for same.

33. Plaintiffs filed an Expedited Appeal of the BCBSLA denial of services at Norris by U.S. Postal Service certified mail with both BCBSLA and its agent or contractor, New Directions, on May 15, 2018. Both BCBSLA and New Directions received the Appeal on May 18, 2018 and, while BCBSLA did not respond, New Directions Behavioral Health on its behalf and on behalf of BCBSLA responded in writing on May 18, 2018—the same day it received the appeal—with a decision upholding the denial of services for K.S. at Norris.

34. In the May 18, 2018 Denial for Services, New Directions / BCBSLA wrongly assert that the requested inpatient services are not "Medically Necessary." The apparent rationale by BCBSLA and New Directions for this denial is their opinion that treatment records seemed to reflect that K.S. was making only marginal progress due to the severity and intensity of K.S.'s multiple and chronic severe psychiatric diagnosis. For this reason, BCBSLA / New Directions denied further services because K.S. does not meet the requirement of showing progress towards objective, measurable and time-limited treatment goals for K.S. to transition to the next appropriate level of care.

35. Neither BCBSLA nor its agent, New Directions, provided any of the supposed criteria on which they based this denial, even though the entire claim file and all decisions and information supporting said decisions was requested by plaintiffs as part of the appeal to

BCBSLA and New Directions.

36. BCBSLA and New Directions, in denying authorization for in-patient care at Norris Academy demonstrate their conflict of interest in the handling of this claim, insofar as they had previously approved a less expensive but non-secure step-down facility. This constitutes a breach of their fiduciary duty. Insofar as BCBSLA owes a duty to plaintiffs to hire a competent third party claims administrator, BCBSLA has in the alternative failed to discharge that duty in negligently hiring an incompetent entity, New Directions, to handle this claim.

37. On September 10, 2018, K.S. was discharged from resident inpatient treatment at Norris, after a six-month treatment program. While she was deemed to have improved, she not considered able to return home. It was recommended that she transfer to Devereux in Viera, Florida. K.S. was transferred to Devereux in Viera, Florida, and was admitted there on or about September 11, 2018. A claim for authorization of this resident inpatient treatment was submitted to BCBSLA and/or New Directions prior thereto by Devereux. The claim was denied. Devereux filed an appeal timely on behalf of plaintiffs, which appeal was denied shortly thereafter. K.S. has undergone inpatient treatment at Devereux since the time of her admission to the date of this filing. The diagnoses received from her attending physicians have remained consistent at Devereux from her time at Norris and Cumberland.

### BCBSLA'S UNREASONABLE DENIALS

38. On April 18, 2017, BCBSLA denied further inpatient treatment for K.S. at Cumberland as not medically necessary, effective April 19, 2017, without examining K.S. or informing Plaintiffs of the specific basis of the denial. This denial was rendered by BCBSLA's

agent/contractor, Health Integrated.   The denial was based on Dr. Barbara Nabrit-Stephenson's review of treatment records and without either a physical examination or a peer to peer consult.   On the same day, April 18, 2017, K.S. eloped from her parents' rented condominium during a therapeutic off grounds pass and had to be brought by police to a local hospital emergency department to stabilize her before she could be safely transported by the parents back to Cumberland.

39. BCBSLA's April 18, 2017 denial letter states that a "peer to peer" review can be requested. Cumberland's medical director, who was also K.S.'s treating physician, requested such a conference on April 24, 2017, but the request was denied as having already occurred between BCBSLA's CMO and Dr. Nabrit-Stephens, neither of whom have ever evaluated, treated or even seen K.S.   Dr. Nabrit-Stephens is a pediatrician but the qualifications of the BCBSLA CMO were not disclosed.   BCBSLA has not provided the credentials of either of these physicians nor shown their expertise with or even familiarity with K.S.'s conditions within 30 days of written request to BCBSLA by the Plaintiffs.

40. On or about June 15, 2017, Plaintiffs appealed the BCBSLA decision to deny further treatment as "medically unnecessary."   On June 23, 2017, BCBSLA agreed with plaintiffs' appeal as to "medical necessity" because the ongoing treatment for K.S. was considered on appeal by BCBSLA to be medically necessary.   However, BCBSLA then asserted, in the same letter regarding plaintiffs' appeal, and for the first time after almost 15 months of medically necessary treatment, that a policy exclusion for "custodial care" would now apply to deny further inpatient treatment for K.S. The use of this exclusion in the new denial of treatment was backdated with an effective date of denial of services of April 19, 2017.   The

exclusion had not been previously asserted in the denial of April 18, 2017 but was used to change the reason for denial, after the fact.

41. This June 23, 2017 and later denials of authorization for continued medically necessary inpatient treatment for K.S. at the three facilities detailed herein are not based in fact and, on information and belief, do not follow the required terms of the policy or the internal guidelines of BCBSLA or its policies or the required ERISA full and fair review and are therefore evidence of arbitrary and capricious behavior. Further, the use of a policy exclusion to backdate a denial is arbitrary, capricious and unreasonable. Further, the use of this Exclusion violates Louisiana and federal health care statutes regarding rehabilitative and habilitative needs and custodial care. Thus, this BCBSLA process does not substantially comply with ERISA's stated procedures.

42. Because of BCBSLA's arbitrary, capricious, and unreasonable denial of authorization for continued inpatient treatment, K.S. has been damaged in her mind and body, including increased symptoms, anxiety, depression, increased disability, past and future loss of enjoyment of life, past and future mental and physical pain and suffering, increased medical expenses, and other damages to be shown at trial of this matter. Plaintiffs Soileau and Kovach are damaged by BCBSLA's conduct to the extent that they have suffered pain and suffering, loss of enjoyment of life, loss of earnings and or loss of use of funds which had to be used to cover the obligations of BCBSLA and then wait on reimbursement, and other damages to be shown at trial on the merits of this matter.

43. Plaintiffs and K.S. were injured, in whole or in part, through the fault of defendant BCBSLA, its agents, or employees, or others, for whom BCBSLA is legally responsible, by virtue of

the doctrine of respondeat superior, including alleged independent contractors, such as Health Integrated, New Directions, or Magellan Health, Inc., retained by BCBSLA to discharge its obligations under the contract of insurance at issue herein.

### POLICY PROVISIONS AND BCBSLA'S UNREASONABLE PAYMENT SCHEME

44. At all times relevant hereto, Soileau & Associates, LLC had in effect a policy of medical and hospitalization coverage through BCBSLA, Group No. 27R71ERC and Contract No. 200722509 (hereinafter 'the Policy'), which provided coverage to K.S. for her known medical conditions, symptoms, and medically necessary treatment.

45. The Policy issued to Soileau & Associates, LLC is a health insurance policy, created under the law of Louisiana and pursuant to the provisions of the Patient Protection and Affordable Care Act, rather than an indemnity policy, that provides coverage for K.S.'s claims. Nothing in this insurance policy requires the Plaintiffs to pre-pay the provider or hospital for the services approved by BCBSLA. BCBSLA has nevertheless required Plaintiffs to pay for K.S.'s treatment directly to Cumberland and then request reimbursement from BCBSLA. BCBSLA has insisted that Cumberland bill its sister company, BCBS of Virginia, for the services, which Cumberland did on a regular basis. However, this requirement forced Plaintiffs to fully fund the inpatient treatment and then to request reimbursements which BCBSLA delayed and denied. Further, BCBSLA has damaged Plaintiff's by shirking its fiduciary obligations to the plan participants by actually negotiating a day rate that was higher than the $1,050.00 per day rate negotiated by Plaintiffs with Cumberland. Thus, not only did Plaintiffs have to pre-pay BCBSLA's obligations to Cumberland, but they were forced to pay a higher rate at BCBSLA's insistence. Plaintiffs should have been able to rely on the

plan provisions regarding payments.  To their detriment, and after being misinformed by BCBSLA agents or employees, the plan participants undertook the advance payments as instructed by BCBSLA in order to get the medically necessary treatment for their daughter only to later have BCBSLA change its mind and deny coverage and payment after the treatment had already been provided.

46. To date, as required by BCBSLA, even though the actual policy and contract between the parties does not state anywhere in it that prepayment of preauthorized services is required, Plaintiffs have been forced by BCBSLA to prepay all charges to Cumberland at the rate agreed to and negotiated by BCBSLA and Cumberland (without any input from Plaintiffs) of $1,192.00 per day due to the urgent need for treatment.  This prepayment was the only way for K.S. to receive treatment because BCBSLA refused to pay Cumberland directly in spite of the agreement it negotiated with Cumberland.

47. BCBSLA owed plaintiffs a fiduciary duty under the ERISA and applicable state law.  In placing K.S. at Cumberland, plaintiffs negotiated a daily rate of $1,050.00 for her inpatient care.  Once BCBSLA agreed to authorize inpatient treatment, it informed Cumberland and plaintiffs that it would negotiate the daily rate, which it set at $1,192.00.  BCBSLA thereafter misinformed plaintiffs and required, against policy provisions, that plaintiffs prepay this higher rate and failed to timely reimburse plaintiffs, as described, supra.  BCBSLA thereafter arbitrarily denied reimbursement altogether, as also described supra.  BCBSLA's negotiation of a higher daily rate than plaintiffs would have otherwise been required to pay to Cumberland, which it then required plaintiffs to prepay with reimbursement to come later, if at all, constitutes a breach of BCBSLA's fiduciary duty to plaintiffs.

17

48. Pursuant to the Order of the court denying Plaintiff's Motion to Remand (Doc. 22), the policy at issue herein constitutes an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. §1002(A)(1).  Plaintiffs reserve their right to appeal this decision and Order at an appropriate time.  BCBSLA is the plan creator, policy writer, insurer of the plan, plan administrator, and claims administrator of the plan.  In its capacity as such, it is a fiduciary of the plan and owes a fiduciary duty to all participates of the plan when administrating claims. BCBSLA breached its fiduciary duties by forcing plaintiffs to pay sums that it should have paid pursuant to the terms of the policy.

49. Comprehensive Major Medical Benefit Plan Contract No. 200722509 is an insurance policy which specifically calls for a non-network deductible during each benefit period of individual ($2,600.00) and family ($5,200.00). Out-of-pocket amounts payable by Subscriber, which include deductible amount and all eligible co-insurance amounts, are capped at $7,000.00 for an individual for non-network providers for each benefit period.  Nothing in this Insurance Policy requires the Subscriber to prepay with the provider or hospital for the services approved by BCBSLA.  The plan is accordingly an insurance policy and not an indemnity policy.  Notwithstanding these provisions, BCBSLA asserted an entitlement to reduce Plaintiff's reimbursements on three separate occasions for deductibles and co-payments, even after advising the Louisiana Insurance Commissioner's office that it would not take a deductible because of the distance that plaintiffs' had to go to find a hospital that could care for K.S.

50. According to the Schedule of Benefits as stated in BCBSLA Form No. 97176EX-037 R01/15, mental health benefits are payable the same as any other illness. Inpatient admissions

18

must be authorized and authorization must be requested prior to a service being rendered. If the service or supply is medically necessary, benefits are provided based on the participating status of the provider of the service.    Soileau & Associates, LLC purchased this policy of insurance in 2014, 2015, 2016, 2017, and 2018, and followed all requirements to seek pre-approval for all services.

51. The policy contains in Article XVIII, Care Management, the following applicable language:

Part 1.A. Authorization of Admissions, Services and Supplies, Selection of Provider, and Penalties. In pertinent part, this section reads as follows: A Member may generally obtain medical care from any Provider. Benefits will be paid at the highest Network level when care is received from a Network Provider. Participating and Non-Participating Providers are Non-Network Providers.

a)      If a Member wants to receive services from a Non-Network Provider and obtain the highest level of Benefits, he must notify Our Care Management Department before services are rendered. We will approve the use of a Non-Network Provider only if we determine the services cannot be provided by a Network Provider within a seventy-five (75) mile radius of the Member's home.

We must approve the use of the Non-Network Provider and issue any required Authorization before services are rendered.

52. Under Article V. of the contract, Hospital Benefits, the contract requires all admissions to be authorized as outlined in Care Management (previously discussed above). Article V. goes on to state:

The following services furnished to a member by a hospital are covered:

A) Inpatient bed, Board, and General Nursing Service;

1) Hospital room and board and general nursing services […]

4) In a Residential Treatment Center for Members with Mental Health, substance abuse Benefits.

B) Other Hospital Services (Inpatient and Outpatient) […]

2) Drugs and medicines including take-home Prescription Drugs […]

6) Diagnostic Services rendered by a Hospital employee […]

8) Psychological testing ordered by the attending Physician and performed by a Hospital employee.

53. Under Article IX., Mental Health Benefits, the Plan states that treatment of mental health is covered and, furthermore, that inpatient treatment for mental health must be authorized as provided in the Care Management Article of this Benefit Plan (previously discussed). Further, the policy calls for treatment for children with Autism, which is one of K.S.'s diagnoses.

### REIMBURSEMENT DELAYS

54. BCBSLA has repeatedly delayed reimbursing Plaintiffs. A first request for reimbursement of payments for inpatient treatment at Cumberland for the period from April 8, 2016 through June 30, 2016 was submitted to BCBSLA on or about September 2, 2016.

55. A second request for reimbursement of payments for inpatient treatment at Cumberland for the period July 1, 2016 through September 30, 2016 was mailed to BCBSLA on or about

October 24, 2016.

56. A third request for reimbursement of payments for inpatient treatment at Cumberland for the period October 1, 2016 through November 30, 2016 was sent to BCBSLA on December 19, 2016.

57. Almost eight months after K.S. was admitted to Cumberland, on January 6, 2017, BCBSLA finally issued a check for partial reimbursement to plaintiffs. This check was supposed to reimburse plaintiffs for payments to Cumberland for K.S.'s treatment from April 8, 2016 through October 31, 2016.

58. The January 6, 2017 reimbursement was untimely under the policy provisions and also under the safe harbor provisions allowed in ERISA. It was also untimely pursuant to LSA-R.S. 22: 1821(A), as it was over 30 days in processing for each claim. Further, the amount reimbursed was wrong and incalculable from its accompanying explanation of benefits form (hereinafter 'EOB') that was issued on January 9, 2017. Further, to date, BCBSLA has not responded to the plan participants' written request to the plan administrator for the specific calculations and criteria claimed and used in making the reimbursements

59. A fourth request for reimbursement for payments made by plaintiffs for K.S.'s inpatient stay at Cumberland, covering the period November 1, 2016 through December 31, 2016, was submitted to BCBSLA on February 17, 2017. The period November 1, 2016 through November 30, 2016 had already been submitted to BCBSLA on December 19, 2016 but because no response was received, it was resubmitted on February 17, 2017 with the request for December 1-31, 2016.

60. A fifth request for reimbursement covering payments made by plaintiffs to Cumberland for

the inpatient treatment of K.S. for the period January 1, 2017 through February 28, 2017 was submitted to BCBSLA on March 13, 2017.

61. On April 26, 2017, BCBSLA finally responded to these requests for reimbursement by sending another check for reimbursement. An EOB to explain this reimbursement check was sent on May 2, 2017. In this EOB, BCBSLA attempted to explain its adjusting of the claim. The adjusting of these reimbursement claims again took over 30 days to complete and was inaccurate. In the EOB, BCBSLA claimed an additional deductible of $5,200.00 and an additional charge of $728.77 as coinsurance, even though it had previously waived deductibles and no co-insurance is due under the terms of this policy. Thus, this accounting and adjusting was incorrect.

62. On February 1, 2017, BCBSLA sent a second check to plaintiffs. On February 3, 2017, BCBSLA itself advised plaintiffs that no deductible was being collected because K.S. had to seek services out of state due to the fact that there are no appropriate facilities within Louisiana for her to get treatment. The amount to be reimbursed to Plaintiffs is easily calculated. An incorrect amount was nevertheless paid in excess of 30 days after demand was made on BCBSLA.

63. A sixth request for reimbursement for payments made by plaintiffs to Cumberland for the inpatient treatment of K.S., covering the period from March 1, 2017 through March 31, 2017, was sent to BCBSLA on or about April 24, 2017. BCBSLA responded to plaintiffs' request over 30 days later on May 29, 2017 with a reimbursement, which was again an incorrect reimbursement amount.

64. A seventh request for reimbursement for payments made by plaintiffs to Cumberland for the

inpatient treatment of K.S., covering the period April 1, 2017 through April 30, 2017, was sent to BCBSLA on June 22, 2017. This claim had previously been sent to BCBSLA through its agent, Blue Cross Blue Shield of Virginia by Cumberland as it has done for each month of this claim. BCBSLA authorized inpatient treatment and services rendered to K.S. from April 1, 2017 through April 18, 2017 as medically necessary. Plaintiffs also sought reimbursement for the period of April 19 through April 30, 2017 or an additional 12 days paid by Plaintiffs to Cumberland. This claim has not been paid.

65. An eighth request for reimbursement of payments made by plaintiffs to Cumberland for the inpatient treatment of K.S. was sent by plaintiffs to BCBSLA on September 27, 2017. This request again covered the period of inpatient treatment at Cumberland from April 1, 2017 through April 18, 2017, which has not been previously adjusted by BCBSLA. It also now covered the period April 19, 2017 through June 23, 2017, which period should have been authorized as BCBSLA admitted that the inpatient treatment of K.S. at Cumberland was medically necessary but then, on administrative appeal, retroactively applied a policy exclusion for 'custodial care' to continue to deny benefits in contravention of the requirement to provide coverage for habilitative and rehabilitative treatment and care. This request also covered the period June 24, 2017 through August 31, 2017. To date, BCBSLA has ignored these requests.

66. A ninth request for reimbursement of payments made by plaintiffs to Cumberland for the inpatient care of K.S. was sent by plaintiffs to BCBSLA on December 15, 2017. This request covered the medically necessary inpatient treatment of K.S. at Cumberland from September 1, 2017 through November 30, 2017. No response has been had from BCBSLA regarding

this claim for reimbursement.

67. A tenth request for reimbursement of payments made to Cumberland by plaintiffs for the inpatient care of K.S. was sent by plaintiffs to BCBSLA on May 16, 2018 covering the period of medically necessary inpatient treatment and services for K.S. from December 1, 2017 through February 20, 2018 at Cumberland. No response has been had from BCBSLA regarding this claim. Plaintiffs have paid the expenses for the medically necessary treatment at Cumberland at a rate of $1,192.00 per day, even though BCBSLA has denied further coverage for this inpatient treatment by retroactively misapplying a policy exclusion over a year after the claim had been authorized. BCBSLA has further failed to pay for any treatment at Norris or Devereux, for which either plaintiffs have paid or Louisiana Medicaid has paid, through its agent, United Healthcare Community Plan and to whom BCBSLA owes reimbursement.

68. Neither BCBSLA nor any of its agents have provided any of the supposed criteria on which they based their several denials in this matter, even though the entire claim file and all decisions and information supporting said decisions was requested as part of each appeal and reimbursement request sent by US Postal Service Certified Mails to BCBSLA by plaintiffs. Thus, BCBSLA failed to respond within 30 days of written request for the above referenced information.

69. BCBSLA's denial of authorization for in-patient care at Cumberland, Norris, and Devereux demonstrates its conflict of interest in the handling of this claim, insofar as it had previously approved inpatient treatment and has provided no reason for the delayed denial for ongoing inpatient treatment other than a policy exclusion that is inapplicable to K.S.'s claim.

BCBSLA's conflict of interest is shown by the fact that the same person or entity responsible for evaluating the claim and deciding whether or not to pay it is also the person or entity responsible for paying the claim. This ultimately results and did result in a financially motivated decision to terminate medically necessary benefits that the plan participant is entitled to receive. This constitutes a breach of its fiduciary duty and a failure to provide a full and fair review of the claim.

70. BCBSLA and/or its respective agents have violated the provisions of the plan and health insurance policy, the provisions of ERISA, the Patient Protection and Affordable Care Act, federal common law, and the laws of Louisiana and have breached the contract of health insurance it made with Plaintiffs herein in the following specific ways:

a.) By failing to timely accept the claims for treatment forcing plaintiffs into repeated and time consuming Appeals and delaying the medically necessary treatment for K.S.;

b.) By failing to assist or communicate with plaintiffs and/or K.S.'s treating physicians or other medical providers such as Cumberland, Norris, and Devereux personnel regarding authorizations for treatment and/or the claims and/or the denials;

c.) By making arbitrary and capricious decisions that were not based in facts or the terms and conditions of the insurance contract as clearly stated in policy language which resulted in repeated denials for service and deterioration of K.S.'s medical condition as well as delaying her treatment at Cumberland, Norris, and Devereux;

d.) By failing to correctly and timely process the plaintiffs' claims for services and/or reimbursement of payments;

e.) By insisting that Plaintiffs directly prepay Cumberland for the authorized, covered and medically necessary inpatient treatment at Cumberland in violation of the contract provisions;

f.) By failing to authorize treatment and/or to pay for the medically necessary inpatient treatment at Cumberland, Norris, and Devereux;

g.) By failing to timely reimburse plaintiffs or Louisiana Medicaid for the moneys they paid to Cumberland, Norris, and Devereux;

h.) By failing to pay for travel to Cumberland, Norris, and Devereux when K.S. was admitted for treatment;

i.) By failing to pay interest on the moneys plaintiffs and/or Louisiana Medicaid were forced to advance to Cumberland, Norris, and Devereux for the medically necessary treatment of K.S.;

j.) By incorrectly calculating deductibles and copayments;

k.) By failing to provide accurate EOBs and incorrectly advising other medical providers on the amount of deductible still owed by plaintiffs;

l.) By failing to provide copies of the claims file and all criteria, documents and materials used in making any determinations of coverage in this matter within 30 days of a written request to BCBSLA;

m.) By use of an inapplicable exclusion on administrative appeal to retroactively deny benefits for treatment at Cumberland, Norris, and Devereux;

n.) By bad faith adjusting of the claims;

26

o.) By failing to honor the provisions of the policy it sold to Plaintiffs as well as the provisions of the ERISA, the Patient Protection and Affordable Care Act, federal common law, and the laws of Louisiana such that it favored its own financial needs over the needs of its insured; and

p.) All other regulatory and statutory violations that may be shown at trial on the merits of this matter.

71. As a result of their actions, inactions, and breaches of their duties, BCBSLA and/or their respective agents have damaged plaintiffs in the following non-exclusive ways:

a.) K.S.'s treatment has been delayed resulting in a worsening and deteriorated conditions;

b.) K.S. has suffered additional depression, loss of hope and the enjoyment of life;

c.) Plaintiffs Soileau, Kovach, and K.S., have been deprived of the daily enjoyment, love, and affection involved in a parent-child relationship, and K.S. has been deprived of the daily guidance that her parents could have provided;

d.) K.S. has lost the opportunity to receive education and the opportunity for socialization in a timely manner with her peers and in her community;

e.) Plaintiffs have had to bear the cost of this inpatient treatment for which they contracted with BCBSLA for insurance only to find that BCBSLA would not honor its contract in a timely and appropriate manner in accordance with the ERISA, the Patient Protection and Affordable Care Act, federal common law, and the laws of Louisiana regarding contract law and insurance law;

f.) Plaintiffs have had to spend excessive amounts of time trying to communicate with BCBSLA for assistance in this claim, to no avail, resulting in their loss of revenue from not being able to participate in their own businesses;

g.) Plaintiffs have lost funds that were not fully and timely reimbursed and or had to pay penalties for funds taken from other accounts to be used to pay for this treatment that was properly the obligation of BCBSLA to pay;

h.) Plaintiffs and/or Louisiana Medicaid have not been properly reimbursed for the claims and required transportation;

i.) Plaintiffs Soileau and Kovach have sustained pain and suffering, loss of enjoyment of life, loss of earnings, and other damages (including deleterious health effects) arising out of the affliction of their daughter, K.S by defendant in this matter;

j.) Plaintiffs and/or Louisiana Medicaid have not received interest on monies that were utilized to pre-pay K.S.'s medical expenses per BCBSLA;

k.) Plaintiffs have suffered the inconvenience and anxiety of finding alternative sources of funding their daughter's medically necessary treatment that is not being paid for by BCBSLA pursuant to its policy of health insurance, including requesting, proving the entitlement to and managing the payment or reimbursement of medical bills and services either through loans or by Louisiana Medicaid, through its agent, United Health Care Community Plan.;

l.) Plaintiffs have suffered the inconvenience and anxiety of managing liens for payment of medical bills by creditors, including Medicaid, through its agent, United

28

Health Care Community Plan, because of defendant's arbitrary, capricious and willful failure to pay for the medically necessary treatment of K.S.;

m.) Plaintiffs have had adverse tax effects, including an audit for the first time in their lives, to the extent that untimely reimbursements have caused the U.S. Internal Revenue Service to examine the untimely reimbursements as potential income because large reimbursements have occurred in years other than the years in which payments to be reimbursed occurred; and

n.) All other legal damages that may be shown at trial on the merits of this matter.

72. On information and belief, the actions and omissions of BCBSLA and/or their respective agents or contractors described herein are part of their individual and collective cultures of misinformation and bad faith adjusting, which have afflicted and affected other policy holders in similar ways and for which BCBSLA should be made to answer to all. Though Plaintiffs have only commenced to gather information and investigate their claim, it is apparent that BCBSLA has an internal operating policy that afflicts all similarly situated persons. Plaintiffs thus reserve the right to qualify this petition as a class action on behalf of other potential victims.

73. All administrative procedures have been exhausted. Plaintiffs or the medical providers of K.S. timely appealed the denials of benefits. BCBSLA has not meaningfully responded to plaintiff's appeals and demands.

74. BCBSLA has acted as plan creator, an administrator, claim administrator, and insurer in this matter.

75. BCBSLA has acted contrary to its plan provisions and without reasonable justification in

making decisions and changing its decisions, including terminating medical benefits under the policy for the medically necessary inpatient treatment for K.S.  BCBSLA's actions have been in bad faith and in abuse of its discretion as either claim administrator or plan administrator or insurer of the plan.  BCBSLA has failed or refused to properly and adequately review plaintiff's medical information. Therefore, BCBSLA failed to provide full and fair review of plaintiffs' claims.

76. BCBSLA, without reasonable justification, and in abuse of its discretion and in flagrant disregard of the clear language of the plan has changed its determination by use of an inappropriate and untimely policy exclusion on an administrative appeal concerning plaintiff K.S.'s entitlement to medically necessary inpatient treatment and medical benefits and has now refused to grant plaintiff K.S. the benefits to which she is entitled under the plan.

77. BCBSLA, in violation of ERISA standards, has failed to provide documents including the claim documents and/or administrative record within 30 days of written request to BCBSLA, whose actions have amounted to those of a de facto plan administrator.  The plan criteria and definitions and BCBSLA's rationale for decision making as well as all internal records regarding who was involved in the decision and all documents created or used in making decisions in this claim was first requested by the plaintiffs in March, 2016. Written requests for the decision rationale and criteria used in making decisions was requested in writing by Plaintiffs in every appeal or request for reimbursement submitted to BCBSLA, the claims administrator and de facto plan administrator and the only party with access to the information.   To date, this information has not been provided, except that New Direction sent some information in November 2018 regarding only the denial of treatment at Devereux.

30

78. Plaintiffs contend that BCBSLA has misinformed plaintiffs and ignored the relevant portions of the Patient Protection and Affordable Care Act, a statute under which the insurance policy at issue was created, and, in so doing, BCBSLA has violated the ERISA and plaintiffs' rights.

79. Plaintiffs assert that ERISA is unconstitutional as applied to healthcare insurance policies insofar as it impairs the power of the District Court to conduct impartial, plenary, and de novo proceedings on the merits by delegating adjudication to a private litigant through the granting of deference to insurance carriers; infringes plaintiffs' Seventh Amendment right to a jury trial in a civil matter by improperly employing summary procedure that is not authorized by the ERISA itself or the Federal Rules of Civil Procedure on all parts of the ERISA; and improperly derogates from plaintiffs' ancient rights to contract and tort remedies.

## CAUSE OF ACTION NO. 1

80. Plaintiffs hereby incorporate by reference the above and foregoing allegations in paragraphs 1-79 as if written hereunder *in extenso*.

81. BCBSLA's refusal to continue benefits and its improper termination of benefits under the Plan for plaintiff's medical treatment is in violation of the ERISA, the Patient Protection and Affordable Care Act, the federal common law and applicable consistent state laws, and the underlying provisions of the plan.  Plaintiffs aver that BCBSLA has abused its discretion in denying benefits and has done so without reasonable justification.

82. Pursuant to § 502(a)(1)(B) of the ERISA, plaintiff is entitled to recover benefits due to her under the plan regarding her past medical treatment at Cumberland, Norris, and Devereux, including prejudgment interest, as defendants have failed to substantially comply with the

31

ERISA and its procedure and have failed to comply substantially with the terms of the insurance policy between the parties, as well as other applicable federal and state law.

**CAUSE OF ACTION NO. 2**

83. Plaintiffs hereby incorporate by reference the above and foregoing allegations in paragraphs 1-82 as if written hereunder *in extenso*.

84. Because plaintiff K.S. requires ongoing and continuing inpatient medical treatment for the foreseeable future, defendant BCBSLA's improper termination aforesaid has interfered with her rights under the terms of the insurance policy between the parties, in violation of the policy, the ERISA, the Patient Protection and Affordable Care Act, the federal common law, and the laws of Louisiana.

85. Specifically, BCBSLA and/or its agents or contractors has relied on an unlawful term in the insurance policy at issue, regarding its exclusion for 'custodial care,' to the extent that the Patient Protection and Affordable Care Act requires the policy to cover rehabilitative and habilitative care.

86. Specifically, further, BCBSLA has required prepayment of medical expenses to Cumberland, Norris, and Devereux, contrary to the terms of the insurance contract at issue herein.

87. Specifically, further, BCBSLA has negotiated a higher daily rate at Cumberland than plaintiffs had already negotiated, breaching its fiduciary duty to them.

88. Plaintiffs accordingly seek all equitable relief and declaratory relief for future benefits under the Plan available under § 502(a)(3) of the ERISA, including an injunction ordering defendant to provide benefits in accordance with the recommendations of the treating physicians, and other equitable relief to remedy the defects described hereinabove.

89. Plaintiffs seek as remedies reformation of the insurance contract and surcharge.

### CAUSE OF ACTION NO. 3

90. Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-89 as if written hereunder *in extenso*.

91. Under 29 U.S.C. § 1102(21)(a) defendant BCBSLA is a fiduciary with respect to the Plan when it exercises discretionary control respecting management of the Plan with regard to benefit claims.  Defendant is a fiduciary when it has discretionary authority or responsibility in the administration of the Plan.

92. As a fiduciary of Plaintiffs, defendant owes a fiduciary duty to Plaintiffs as the administrator of benefits under the Plan including benefits claimed by Plaintiffs.  Plaintiffs are Plan Participants pursuant to the language of the Plan.

93. The statute authorizes a cause of action to recover benefits due the Plan or to correct an unlawful gain that has inured to the fiduciary; BCBSLA has as fiduciary accumulated an unlawful gain in accepting premium and denying claims in this matter contrary to law and terms of the insurance contract between the parties.

94. BCBSLA breached its fiduciary duty to plaintiffs herein in violation of § 502(a)(2) of the ERISA, the Patient Protection and Affordable Care Act, and the federal common law, which breach has damaged plaintiffs, as described, supra.  Plaintiffs accordingly seek all damages warranted in the premises for the breach of duty, including but not limited to damages for defendant's negotiation of a higher daily rate than what plaintiffs had already negotiated with Cumberland.

**CAUSE OF ACTION NO. 4**

95. Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-94 as if written hereunder *in extenso*.

96. Despite numerous requests for Plan and claim documents, defendant BCBSLA has declined to provide Plaintiffs with the documents that are owed under the ERISA, including documents created or used by BCBSLA to adjust the claim, such as the medical treatment guidelines, which documents are solely within the control of BCBSLA and which failure to provide has interfered with Plaintiffs' exercise of their rights and has impaired the health care and treatment of K.S.

97. BCBSLA has accordingly breached its obligation under § 502(c)(1) of the ERISA to provide such documents within 30 days of written request to the Plan administrator. Plaintiffs seek all available penalties available under the ERISA for this breach of duty, which has prejudiced Plaintiffs' ability to enforce their rights under the policy of insurance. Plaintiffs also seek injunctive relief under § 502(a)(3), ordering defendant to deliver the requested documents to Plaintiffs.  Plaintiffs furthermore seek an award of medical and general damages as a § 502(c)(1) penalty, insofar as the defendant's delay has made K.S.'s medical condition worsen or the length of treatment increase.

98. Plaintiffs also seek as a penalty under § 502(c)(1) damages to K.S. suffered because of delay in treatment caused by bad faith claims handling, pursuant to LSA-R.S. 22: 1821(D).

**CAUSE OF ACTION NO. 5**

99. Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-98 as if written hereunder *in extenso*.

100.  Defendant BCBSLA or its agents or contractors on BCBSLA's behalf has misrepresented plan provisions and its intentions regarding the medical care of K.S. to plaintiffs, plaintiffs' medical providers, and to third parties.

101.  Plaintiffs have reasonably relied on these misrepresentations, to their detriment, suffering damages related to their reliance on same including travel expense.

102.  Defendant is accordingly estopped from denying claims pursuant to § 502(a)(3) of the ERISA, and is liable to plaintiffs for the sums expended by plaintiffs or others on their behalf, such as Louisiana Medicaid, through its agent, United Healthcare Community Plan, in reliance upon the misrepresentations aforesaid.

## CAUSE OF ACTION NO. 6

103.  Plaintiff hereby incorporates by reference the above and foregoing allegations in paragraphs 1-102 as if written hereunder *in extenso*.

104.  Defendant BCBSLA failed to provide Plaintiffs a full and fair review of their claims for benefits, abusing its discretion thereupon, adjusted the claims arbitrarily and capriciously, and in deference to its own financial benefit, and/or have not substantially complied with ERISA procedures, insofar as it has afforded deference to initial adverse benefit determinations, has had the same person conduct appeals of initial determinations, has failed to consult with health care professionals who have appropriate training and experience for the making of medical judgments, has failed to identify medical experts whose advice was consulted regarding the claim, has consulted the same health care professional in appeals as in initial determinations, has failed to provide the evidence on which adverse determinations on administrative appeal have been based, has arbitrarily changed the reasons for adverse

benefit determinations on appeal, has not examined K.S. physically and personally even though the policy allows and the medical diagnoses require such examination, engaged in conflicts of interest that has resulted in harm to Plaintiffs, and other procedural violations under the ERISA, the Patient Protection and Affordable Care Act, and the federal common law, which in part or taken as an aggregate constitute flagrant procedural violations.

105.  On account of these procedural violations, Plaintiffs seek all relief available for same under the law, including without limitation a de novo standard of review, the striking of defendant's evidence and defenses, and the reinstatement of benefits so as to return K.S. to the status quo ante.

106.  Furthermore, in this matter, the insurance policy at issue is the 'plan' and BCBSLA has claimed a deferential standard of review regarding its claimed sole discretion to interpret the policy. Insofar as BCBSLA claims sole authority to interpret the policy and administer claims made under the 'plan,' it steps into the role of plan administrator.  Therefore, plaintiffs seek a determination that BCBSLA is, in this matter, the plan administrator, claims administrator, and plan insurer.

### CAUSE OF ACTION NO. 7

107.  Plaintiff incorporates by reference all of the above allegations in paragraphs 1-106 as if written hereunder *in extenso*.

108. Defendants, through their conduct, have breached the contract with plaintiffs, have committed negligent acts, have committed bad faith claims handling, have breached their fiduciary duty, have been unjustly enriched, have committed civil conspiracy, and have tortiously interfered with the contract between the parties, and the providers to the extent that

plaintiffs, as third party beneficiaries of the health insurance policy have been damaged, and other violations of applicable state law, as described supra, for which plaintiffs are entitled to recover.

109. Defendants New Directions and Health Integrated owed a duty to plaintiff K.S. to adjust her claims in good faith and have breached that duty, causing her damages to the extent that their wrong and wrongful handling of the claims have delayed or denied her treatment, causing exacerbation to her medical condition. Defendants New Directions and Health Integrated have provided false or misleading information to defendant BCBSLA, contributing to BCBSLA's breaching of its obligations to plaintiffs.

110. Similarly, to the extent that BCBSLA steps out of ERISA coverage and is no longer entitled to the protections and immunities arrogated by insurance carriers thereby, BCBSLA is exposed to state law remedies for its failure to provide plan documents to the alleged plan administrator Soileau & Associates, LLC and for other failures under the contract for which BCBSLA has denied that it is a proper ERISA defendant.

111. For these violations of the laws of the State of Louisiana, plaintiffs seek all damages warranted in the premises.

**CAUSE OF ACTION NO. 8**

112. Plaintiffs incorporate by reference all of the above allegations in paragraphs 1-111 as if written hereunder *in extenso*.

113. Plaintiffs submit that the ERISA is unconstitutional, as applied to this policy of health insurance, insofar as it impairs the power of the District Court to conduct impartial, plenary, and de novo proceedings on the merits by delegating adjudication to a private litigant through the granting of plenary power and deference to insurance carriers; infringes plaintiffs'

Seventh Amendment right to a jury trial in a civil matter by improperly employing summary procedure that is not authorized by the ERISA itself or the Judiciary Act of 1789 and its amendments or by the Federal Rules of Civil Procedure or federal common law; and improperly derogates from plaintiffs' ancient rights to contract and tort remedies.

114.   Plaintiffs seek an order of this Court that holds summary proceedings and deference to the findings and/or decisions of the plan administrator or claims administrator or insurer as unconstitutional.

### JURY DEMAND & RESERVATION OF RIGHTS

115.   A jury trial is hereby requested in this matter.

116.   Plaintiffs reserve the right to amend and or supplement this Complaint with additional facts and or claims as they are uncovered or occur.

### CONCLUSION & PRAYER FOR RELIEF

WHEREFORE Plaintiffs request the following relief insofar as they ask the Court to:

1.   Order the defendants to pay benefits for the plan and policy participants properly according to the terms of the plan and policy, including inpatient or residential treatment in accordance with the recommendations of the physicians who are treating K.S., pursuant to § 502(a)(1)(B) of the ERISA;

2.   Order all appropriate injunctive and declaratory relief under § 502(a)(3) of the ERISA;

3.   Order that defendants are obligated to pay for their breach of fiduciary duty to plaintiffs under § 502(a)(2) of the ERISA;

4.   Declare that the terms of the plan do not require pre-payment by plaintiffs

and that the insurance policy is not a policy of indemnity;

5.　Order that defendants are obligated to reimburse plaintiffs for medically necessary expenses paid to Cumberland, Norris, and Devereux, as well as other medical providers of K.S.;

6.　Order the defendants to cease and desist their violations of the plan and policy, as well as the provisions of the ERISA, and all applicable federal and state law;

7.　Award to plaintiffs the full penalty permitted under § 502(c)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act;

8.　Award to plaintiffs all penalties (as adjusted by the Federal Civil Penalties Inflation Adjustment Act) warranted under the ERISA, the Patient Protection and Affordable Care Act, and the federal common law, as well as attorney fees, costs, and expenses in connection with and prosecution of this action;

9.　Order that defendants are to make plaintiffs whole and cure the inequitable motive and misconduct of defendants pursuant to § 502(a)(3) by promissory estoppel or surcharge;

10.　Award to plaintiffs all damages warranted under the premises of their state law claims;

11.　Find that due to the flagrant procedural violations of the plan and policy by BCBSLA and/or its agents or contractors without a colorable claim for upholding denial of benefits, and because K.S. is clearly entitled to benefits

under the plan or policy, the matter must be determined by the court and not remanded to the de facto plan administrator;

12.  Award to plaintiffs interest on all exigible sums;

13.  Declare that the ERISA as applied to the facts of this case is unconstitutional; and

14.  Grant all other equitable relief and reasonable damages warranted in the premises, including under state law, including prejudgment interest that this Honorable Court deems proper and a penalty under the provisions of section 502(c)(1) of the ERISA.

Respectfully submitted,

s/ *Ryan A. Jurkovic*
Isaac H. Soileau, Jr. (LSBA No. 21384)
soileauih@aol.com
Karen S. Kovach (LSBA No. 26365)
kskovach@aol.com
Ryan A. Jurkovic (LSBA No. 31384)
rjurkovic@soileaulegal.com
1010 Common Street, Suite 2910
New Orleans, Louisiana 70112
504 522 5900 / 504 522 5998 (fax)

and

James E. Cazalot, Jr. (LSBA No. 17510)
jim@cazalotlaw.com
JAMES E. CAZALOT, JR., APLC
209 Highway 22 West, Suite G
Madisonville, Louisiana 70447
985 792 5220 / 985 792 4889 (fax)

Attorneys for Plaintiffs, SOILEAU & ASSOCIATES, LLC, by and through its members, ISAAC H. SOILEAU JR. and KAREN S. KOVACH, appearing also herein individually and on behalf of K.S., a minor child

40

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleadings has been served on counsel of record for all parties to these proceedings, by ECF transmission, this 1st day of March, 2019.

s/ *Ryan A. Jurkovic*