UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SOILEAU & ASSOCIATES, LLC, ET AL.            CIVIL ACTION

VERSUS                                       NO. 18-710-WBV-JCW
                                             c/w 18-7613

LOUISIANA HEALTH SERVICE
& INDEMNITY COMPANY                          SECTION: D (2)

ORDER AND REASONS

Before the Court is Louisiana Health Service & Indemnity Company d/b/a Blue

Cross and Blue Shield of Louisiana's ("Blue Cross") Motion in *Limine* to Exclude

Plaintiffs' Proposed Experts.[1]  The Motion is opposed,[2] and movant has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the

Motion is **GRANTED.**

I.      FACTUAL AND PROCEDURAL BACKGROUND[4]

This action involves Plaintiffs' challenge to benefit determinations made by

Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of

Louisiana (hereafter, "Blue Cross"), for services received by K.S., a minor child,

pursuant to the terms of an employee welfare benefit plan governed by the Employee

---

[1] R. Doc. 127.
[2] R. Doc. 137.
[3] R. Doc. 146.
[4] A detailed summary of the procedural history in this case is set forth in the Court's September 19, 2019 Order and Reasons granting Blue Cross's Motion to Dismiss (R. Doc. 103) and, for the sake of brevity, will not be repeated here.

Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"). [5] Plaintiffs seek benefits under the ERISA Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) (hereafter, "§ 502(a)(1)(B)"). Blue Cross removed the case to this Court on January 23, 2018,[6] and the Court denied Plaintiffs' Motion to Remand on August 15, 2018.[7] Before the Court ruled on the Motion to Remand, however, Plaintiffs filed a second state court action against Blue Cross and its alleged agent, New Directions Behavioral Health, LLC ("New Directions"), which Blue Cross also removed to this Court.[8] The two cases were consolidated on October 26, 2018. [9]

Through a series of amended complaints, Plaintiffs added Health Integrated, Inc., another purported agent of Blue Cross, as a defendant in this case.[10] In their Third Amending & Supplemental Complaint, Plaintiffs asserted the following eight causes of action against all three defendants: (1) a claim for benefits under § 502(a)(1)(B); (2) a claim for equitable relief under 29 U.S.C. § 1132(a)(3) ("§ 502(a)(3)"); (3) a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) ("§ 502(a)(2)"); (4) a claim for failure to timely provide ERISA plan documents under 29 U.S.C. § 1132(c)(1) ("§ 502(c)(1)"); (5) a claim for equitable estoppel under § 502(a)(3); (6) a claim based on the alleged failure to provide a full and fair review of their claims under 29 U.S.C. § 1133 ("§ 503"); (7) state law claims for negligence, breach of

---

[5] *See* R. Doc. 1-2. A detailed summary of the medical treatment at issue in this case is set forth in the Court's August 15, 2018 Order and Reasons denying Plaintiffs' Motion to Remand (R. Doc. 22) and, for the sake of brevity, will not be repeated here.

[6] R. Doc. 1.

[7] R. Doc. 22.

[8] *See* R. Doc. 1-2 in *Soileau & Associates, LLC et al. v. Louisiana Health Service & Indemn. Co.*, Civ. A. No. 18-7613 (E.D. La.).

[9] R. Doc. 37.

[10] *See* R. Docs. 33, 71, 95.

fiduciary duty, unjust enrichment, bad faith claims handling, civil conspiracy and tortious interference with contract; and (8) a claim that ERISA is unconstitutional as applied because it violates Plaintiffs' Seventh Amendment right to a jury trial.[11] Plaintiffs also asserted a ninth claim against Blue Cross, alleging that its benefit determination violated the Americans with Disabilities Act or, alternatively, violated the Patient Protection and Affordable Care Act.[12]

Blue Cross, Health Integrated, Inc. and New Directions filed separate motions to dismiss, with Blue Cross seeking dismissal of all but Plaintiffs' § 502(a)(1)(B) claim,[13] and Health Integrated, Inc. and New Directions seeking dismissal of all of Plaintiffs' claims asserted against them.[14]  The Court granted all three motions in September 2019.[15]  Thus, the only remaining claim in this case is Plaintiffs' § 502(a)(1)(B) claim against Blue Cross.

On July 8, 2019, prior to the Court ruling on the three motions to dismiss, Blue Cross filed the instant Motion in *Limine*, seeking to prohibit Plaintiffs' seven proposed experts from providing any opinions and/or reports in this case.[16]  Blue Cross argues that all of the expert opinions and expert reports should be excluded because the Fifth Circuit has held that expert testimony in an ERISA benefits case is only admissible to assist the Court in understanding medical terminology or

---

[11] R. Doc. 95.
[12] *Id.*
[13] R. Doc. 103.
[14] R. Docs. 140 & 150.
[15] R. Docs. 168, 169, 172, 173, 174 & 175.
[16] R. Doc. 127.

practice relating to a claim.[17]  Blue Cross contends that Plaintiffs' proposed experts, six of K.S.'s treating physicians and an expert regarding the "insurance industry," are being offered to testify regarding the merits of Plaintiffs' claim and Blue Cross's underlying benefit determination, and that the opinions were not submitted as part of the administrative processing of the claim for benefits.[18]  Blue Cross asserts that, because this case involves a § 502(a)(1)(B) claim, the Court's role is to review the administrative record compiled during the administrative processing of Plaintiffs' claim to determine whether Blue Cross's benefit determination was arbitrary and capricious.[19]  Blue Cross contends that it is well settled that evidence outside of the administrative record should not be considered except in very limited circumstances, none of which are present in this case.[20]

Blue Cross points out that Plaintiffs designated five of K.S.'s treating physicians, Dr. Daniel N. Davidow, Dr. David M. Greer, Dr. Manal Durgin, Dr. Milton Anderson and Dr. Ronald Federici as experts relating to "the course of treatment of K.S., diagnosis and medical necessity for treatment of K.S.," and designated a sixth treating physician, Dr. Betty Bueler, to testify as to K.S.'s "course of treatment."[21] Blue Cross argues that Plaintiffs are attempting to introduce evidence relating to the

---

[17] R. Doc. 127-1 at p. 6 (citing *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000) (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999), overruled on other grounds by *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)).

[18] R. Doc. 127-1 at p. 2.

[19] *Id*. at p. 1.

[20] *Id*. at pp. 1-2 & 6 (citing *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999)).

[21] R. Doc. 127-1 at pp. 4-5 (*citing* R. Doc. 127-2).  Although Blue Cross references "Dr. Betty Bueler with the Louisiana Department of Health" (R. Doc. 127-1 at p. 5), this is likely a typographical error, as the attached exhibit lists as an expert "Dr. Betty Muller of the Louisiana Department of Health." (R. Doc. 127-2 at p. 2).

disputed material facts regarding the merits of Plaintiffs' claim for benefits, which is inadmissible because the opinions were not before Blue Cross at the time of the underlying benefit determination.[22]   Blue Cross claims that this well established rule is meant to encourage attorneys for ERISA claimants to make a good faith effort to resolve claims with the administrator before filing suit in district court.[23]   Blue Cross argues that Plaintiffs may not supplement the administrative record with new testimony or opinions from the treating physicians or other experts that were not provided to Blue Cross as part of the claims administration process.   Likewise, Blue Cross asserts that the Court may not consider any "expert" opinions regarding the underlying benefit determination at issue.[24]

Blue Cross also points out that Plaintiffs designated Wayne Citron as an expert on "insurance claims handling practices" and "insurance policy drafting."[25]   Blue Cross asserts that Citron's report addresses Blue Cross's compliance with the guidelines for ERISA, actions of Isaac H. Soileau, actions of Blue Cross, and damages sustained by Isaac H. Soileau on behalf of K.S.[26]   Blue Cross asserts that all of these issues concern material facts regarding the benefits claim at issue, and that the Court is precluded from receiving any such evidence that is outside of the administrative record.   Blue Cross argues that, because Citron's report was not submitted to Blue Cross during the administrative processing of the claim at issue, and because he was

---

[22] R. Doc. 127-1 at p. 7.
[23] *Id.* (*citing Vega*,188 F.3d at 299).
[24] R. Doc. 127-1 at p. 7.
[25] *Id.* at p. 4 (*citing* R. Doc. 127-2).
[26] R. Doc. 127-1 at p. 7 (*citing* R. Doc. 7-4).

designated as a proposed expert, his report and testimony must be excluded.[27]  As such, Blue Cross asserts that all of Plaintiffs' proposed experts should be stricken, and that they should be precluded from testifying, providing any opinions, and/or providing expert reports in this matter.

Plaintiffs assert that Blue Cross's conclusion is manifestly erroneous to the extent that Blue Cross seeks to conflate all of ERISA with § 502(a)(1)(B), and further assert that the narrow exceptions for allowing experts in ERISA cases apply in this case.[28]  Plaintiffs complain that Blue Cross wrongly tried to reduce their entire case down to merely one of their claims, the § 502(a)(1)(B) claim, even though Plaintiffs have alleged other claims that require consideration of additional evidence beyond the administrative record.[29]  Plaintiffs assert that there are at least six types of evidence that are admissible in an ERISA § 502(a)(1)(B) case, including: (1) the administrative record; (2) evidence regarding how the administrator has interpreted the plan in the past; (3) evidence that would assist the court in understanding medical terms and procedures; (4) evidence regarding the completeness of the administrative record; (5) evidence regarding whether the administrator complied with ERISA's procedural regulations; and (6) evidence of the existence and extent of a conflict of

---

[27] R. Doc. 127-1 at pp. 7-8.

[28] R. Doc. 137.

[29] *Id*. at p. 4.  Plaintiffs also argued that the Motion should be denied as inapplicable and premature until the Court dismisses all but the § 502(a)(1)(B) claim.  (*Id*. at p. 5).  Because the Court has since dismissed all of Plaintiffs' claims except for the § 502(a)(1)(B) claim against Blue Cross (R. Doc. 168), Plaintiffs' argument that the expert testimony and reports are admissible with respect to their other claims (R. Doc. 137 at pp. 3, 4-5, 6), is now moot.  Accordingly, this Order will only address Plaintiffs' arguments regarding the admissibility of the expert testimony and reports with respect to their § 502(a)(1)(B) claim.  The Court notes that Plaintiffs have not moved to amend their expert designations since the Court granted Blue Cross's Motion to Dismiss on September 19, 2019, dismissing all but Plaintiffs' § 502(a)(1)(B) claim.  (R. Docs. 168 & 169).

interest created by an administrator's dual role in making benefits determinations and funding the plan.[30]

Plaintiffs assert that their six expert physicians can testify regarding how Blue Cross has interpreted the plan, regarding medical terms and procedures as they relate to the claims in this case, and regarding the completeness of the record, insofar as the medical providers are records custodians who have delivered documents to Blue Cross.[31]  Plaintiffs claim that the six physicians can also testify regarding how Blue Cross handled their claims, which can lay the foundation for Plaintiffs' arguments regarding whether Blue Cross complied with ERISA's procedural regulations.[32]  Although the physicians were not designated as experts to assist the Court to understand medical terminology or practice, Plaintiffs argue that the medical terminology and practices at issue in this case should come from the professionals who wrote the reports that use such terminology and who performed the practices at issue, which is part of the "course of treatment" designation.[33]  Plaintiffs assert that, should the Court find this distinction of designating an expert specifically to assist the Court in understanding medical terminology or practice versus designating an expert to offer an opinion on "course of treatment/diagnosis/medical necessity," salient, Plaintiffs can file an amended designation to make this distinction clear.[34]  Plaintiffs further assert that Wayne

---

[30] R. Doc. 137 at p. 5 (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011); *Vega v. National Life Ins. Servs.*, 188 F.3d 287 (5th Cir. 1999)).
[31] R. Doc. 137 at p. 5.
[32] *Id.* at pp. 5-6.
[33] *Id.* at p. 6.
[34] *Id.*

Citron can testify as an expert in the insurance industry regarding past interpretations of the contract, whether Blue Cross complied with ERISA's procedural regulations and the existence and extent of the conflict of interest created by Blue Cross's dual role in making benefit determinations and paying claims.[35]  For these reasons, Plaintiffs assert that Blue Cross's Motion in *Limine* should be denied.

In response, Blue Cross maintains that Plaintiffs' experts must be stricken because Plaintiffs are trying to introduce expert testimony regarding the underlying benefit determination in this case.[36]  Blue Cross emphasizes that Plaintiffs designated K.S.'s treating physicians as experts regarding "the course of treatment of K.S., diagnosis of K.S. and medical necessity for treatment of K.S."[37]  Blue Cross argues that Plaintiffs seek to have the physicians testify regarding whether K.S.'s medical records and other documents included in the administrative record support a finding of coverage under the ERISA Plan based on "medical necessity."[38]  Blue Cross maintains that such testimony is specifically prohibited in an ERISA benefits case.  Blue Cross also maintains that expert testimony from Wayne Citron regarding the insurance industry does not fit within the narrow exceptions of expert testimony allowed in an ERISA benefits case.[39]

Blue Cross argues that Plaintiffs' proposed experts constitute an improper attempt to introduce additional evidence to the Court that was not before the claim

---

[35] *Id.*
[36] R. Doc. 146 at p. 2.
[37] *Id.*
[38] *Id.*
[39] *Id.*

administrator (Blue Cross) during the processing of the claim.[40]  Although Plaintiffs claim that the expert testimony falls into one or more of the six limited categories of evidence allowed in an ERISA benefits case, Blue Cross argues that none of the experts were designated to provide testimony regarding any of those six issues.[41] Blue Cross also asserts that Plaintiffs' argument lacks merit because all six of the exceptions concern factual issues that are not within the limited scope of expert testimony that the Fifth Circuit has determined is allowable in ERISA benefits cases.[42]  Blue Cross points out that none of Plaintiffs' designated experts have any personal knowledge regarding any of these factual issues.  Thus, Blue Cross contends that Plaintiffs' designated experts would not even be proper factual witnesses in this case.  Blue Cross argues that Plaintiffs are improperly attempting to introduce expert testimony regarding the underlying benefit determination as factual evidence, which is improper and should be excluded.

## II.   LEGAL STANDARD

### A. Admissible evidence in an ERISA § 502(a)(1)(B) case.

Generally, in suits brought under ERISA § 502(a)(1)(B), district courts review the denial of ERISA benefits *de novo*.[43]  If, however, the ERISA plan at issue gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the denial of benefits is reviewed for an abuse of

---

[40] *Id*. at p. 3.
[41] *Id*.
[42] *Id*.
[43] *Burell v. Prudential Ins. Co. of America*, 820 F.3d 132, 137 (5th Cir. 2016) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 98, 103 L.Ed.2d 80 (1989)); *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000).

discretion.[44]  Blue Cross asserts that the ERISA Plan at issue in this case gives Blue Cross discretionary authority to determine eligibility for benefits and to construe the terms of the Plan and, as such, the abuse of discretion standard of review applies in this case.[45]  Plaintiffs do not contest this assertion.[46]

According to the Fifth Circuit, "The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete."[47]  "Once the record is finalized, a district court must remain within its bounds in conducting a review of the administrator's findings, even in the face of disputed facts."[48]  Evidence may not be admitted to resolve the merits of the coverage determination, *i.e.*, whether coverage should have been afforded under the plan, unless the evidence is in the administrative record.[49]  The Fifth Circuit, however, has recognized limited exceptions to this rule, allowing for the admission of the following evidence in a § 502(a)(1)(B) case: (1) evidence related to how an administrator has interpreted terms of the plan in the past; (2) evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a benefits claim;[50] (3) evidence regarding the completeness of the administrative record; (4)

---

[44] *Burell*, 820 F.3d 132 at 137 (citing *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)).

[45] R. Doc. 127-1 at p. 5 (*citing* R. Doc. 13-2 at p. 91).

[46] R. Doc. 137.

[47] *Estate of Bratton*, 215 F.3d at 521 (citing *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999)).

[48] *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 256 (5th Cir. 2018) (citing *Vega*, 188 F.3d at 299).

[49] *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011).

[50] *Ariana M.*, 884 F.3d at 256 (citing *Vega*, 188 F.3d at 299-300); *Estate of Bratton*, 215 F.3d at 521 (citing *Vega*, 188 F.3d at 299) (citations omitted).

evidence regarding whether the plan administrator complied with ERISA's procedural regulations; and (5) evidence regarding the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan.[51] The Fifth Circuit has explained that it created these exceptions "after articulating our concern that a holding to the contrary would allow claimants to circumvent the administrative process by waiting until they filed suit to produce evidence that related to the merits of their claim for benefits."[52] According to the Fifth Circuit, "A plan participant is not entitled to a second chance to produce evidence demonstrating that coverage should be afforded."[53]

## III.   ANALYSIS

### A. None of Plaintiffs' expert designations fit within the Fifth Circuit's narrow exception for expert evidence allowed in a § 502(a)(1)(B) case.

After reviewing the arguments made by both parties, the Court agrees with Blue Cross that none of Plaintiffs' designated experts fit within the Fifth's Circuit's narrow exception for admissible expert testimony in a § 502(a)(1)(B) case. The Fifth Circuit has made clear that expert testimony is only permitted in a § 502(a)(1)(B) case if it would assist the Court in understanding medical terminology or practices relating to the underlying claim for benefits.[54] As Blue Cross points out, none of Plaintiffs' experts were designated as experts for that purpose. The record reflects that Plaintiffs designated six of K.S.'s treating physicians as experts concerning the

---

[51] *Crosby*, 647 F.3d at 263
[52] *Id.* (citing *Vega*, 188 F.3d at 299-300).
[53] *Crosby*, 647 F.3d at 263 (citing *Vega*, 188 F.3d at 299-300).
[54] *Ariana M.*, 884 F.3d at 256 (citing *Vega*, 188 F.3d at 299-300); *Estate of Bratton*, 215 F.3d at 521 (citing *Vega*, 188 F.3d at 299) (citations omitted).

"course of treatment of K.S.," "diagnoses of K.S.," and "medical necessity for treatment of K.S."[55] Plaintiffs also designated Wayne Citron as an expert "on the insurance industry, insurance claims handling practices, and insurance policy drafting."[56] Thus, Plaintiffs' expert designations, on their face, do not fit within the narrow exception of expert testimony allowed in a § 502(a)(1)(B) case.

### B. The six treating physicians cannot offer expert opinions or reports regarding K.S.'s course of treatment, diagnoses or the medical necessity of her treatment.

Going beyond the face of their expert designations, Plaintiffs assert that K.S.'s six treating physicians fall under the limited exception allowed for expert testimony because "course of treatment" necessarily includes evidence regarding the medical terminology and practices involved in the underlying claim for benefits.[57] Despite that assertion, the Court agrees with Blue Cross that Plaintiffs seem to be attempting to use the treating physicians to introduce evidence into the record regarding the merits of their § 502(a)(1)(B) claim. Specifically, it appears that Plaintiffs are attempting to introduce evidence to show that Blue Cross arbitrarily denied Plaintiffs' claim for benefits when the treatment sought was considered medically necessary by K.S.'s treating physicians. Such evidence is prohibited in this Circuit.[58] As previously discussed, the Fifth Circuit has held that claimants, like Plaintiffs, may not circumvent the administrative process by waiting until after they file suit to

---

[55] R. Doc. 127-2 at pp. 1-2.

[56] *Id.* at p. 1.

[57] R. Doc. 137 at p. 6.

[58] *Ariana M.*, 884 F.3d at 256 (citing *Vega*, 188 F.3d at 299-300); *Estate of Bratton*, 215 F.3d at 521 (citing *Vega*, 188 F.3d at 299) (citations omitted).

produce evidence that relates to the merits of their claim.[59]  The Court notes that Plaintiffs could have easily avoided this issue by following clear Fifth Circuit precedent and designating the six physicians as experts for the sole purpose of assisting the Court in understanding the medical terminology or practices related to the underlying claim for benefits.  Plaintiffs, however, chose not to do so.

The Court likewise rejects Plaintiffs' assertion that the treating physicians "can testify regarding how the claim administrator has interpreted the plan . . . and regarding the completeness of the record insofar as the medical providers are records custodians who have delivered documents to defendant BCBSLA [Blue Cross]."[60]  As Blue Cross points out, Plaintiffs have not provided any evidence that the treating physicians have any personal knowledge regarding the completeness of the record maintained by the claims administrator (Blue Cross), or how Blue Cross handles the processing of claims.[61]  Plaintiffs have not directed the Court to any legal authority that supports their position that treating physicians can provide testimony regarding the completeness of the administrative record or how Blue Cross interpreted the ERISA Plan at issue in this case.

Based on the foregoing, the Court finds that the six treating physicians, Dr. Daniel N. Davidow, Dr. David M. Greer, Dr. Manal Durgin, Dr. Milton Anderson, Dr. Betty Muller and Dr. Ronald Federici, shall be prohibited from offering any opinions or reports regarding K.S.'s course of treatment, diagnoses or the medical necessity for

---

[59] *Crosby v. Louisiana Health Service and Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (citing *Vega*, 188 F.3d at 299-300).
[60] R. Doc. 137 at p. 5.
[61] R. Doc. 146 at pp. 3-4.

her treatment.  Although Plaintiffs have not moved for leave to amend their expert designations, the Court believes it is appropriate to address this issue in light of Plaintiffs' statement in their Opposition brief that, if the Court finds the designation important, Plaintiffs *could* remedy the defect with an amended designation.[62]  The Court finds that any such amendment would be futile in this case.  It is evident to the Court that Plaintiffs' primary purpose for designating the treating physicians as experts "regarding the course of treatment of K.S., diagnoses of K.S. and medical necessity for treatment of K.S."[63] in this case is to introduce evidence regarding the merits of their § 502(a)(1)(B) claim.  Fifth Circuit jurisprudence is clear that this type of supplemental evidence is prohibited.   Further, the Court believes any amended designation as to expert Citron would be futile as well, as Plaintiffs' designated him as an expert "on the insurance industry, insurance claims handling  practices,  and insurance policy drafting."[64]

### C. Wayne Citron may not offer expert opinions or reports regarding the insurance industry, insurance claims handling practices or insurance policy drafting.

As noted above, Plaintiffs also designated Wayne Citron as an expert "on the insurance industry, insurance claims handling practices, and insurance policy drafting."[65]  The Court has already determined that, on the face of the expert designation, Citron does not fit into the narrow exception recognized for expert

---

[62] R. Doc. 137 at p. 6.
[63] R. Doc. 127-2.
[64] *Id*.
[65] *Id*.

testimony in a § 502(a)(1)(B) case.  As such, he cannot offer expert testimony in this case.

In their opposition brief, Plaintiffs assert that Citron can testify "as an expert in the insurance industry regarding past interpretations of the contract, whether the claim administrator complied with the [sic] ERISA's procedural regulations, and the existence and extent of the conflict of interest created by the claim administrator's dual role in making benefit determinations and paying claims."[66]  Again, Citron may not offer expert testimony on these issues because such testimony falls outside of the limited exception allowed for expert testimony in a § 502(a)(1)(B) case.  Although Plaintiffs are trying to fit Citron's testimony into one of the other limited categories of evidence recognized by the Fifth Circuit as admissible in a § 502(a)(1)(B) case, Plaintiffs did not designate Citron to provide testimony regarding any of these issue.  Additionally, Plaintiffs have not alleged, much less shown, that Citron has personal knowledge of these issues to allow him to testify as a fact witness in this case.  The Court notes that Plaintiffs' entire argument regarding the admissibility of Citron's testimony is contained in one sentence, which is quoted above.[67]  As such, it is apparent to the Court that Plaintiffs are merely trying to rewrite their expert designations in response to Blue Cross's Motion in *Limine*.  The Court finds that Plaintiffs have not shown that Citron's opinions are admissible under any of the limited categories of evidence recognized by the Fifth Circuit as admissible in a § 502(a)(1)(B) case.

---

[66] R. Doc. 137 at p. 6.

[67] *Id*.

Because Plaintiffs have failed to show that Wayne Citron's expert opinions fall into one of the limited categories of admissible evidence in a claim for benefits under ERISA § 502(a)(1)(B), the Court finds that Citron must be precluded from offering any expert opinions or reports regarding the insurance industry, insurance claims handling practices or insurance policy drafting.

## IV.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Blue Cross' Motion in *Limine* to Exclude Plaintiffs' Proposed Experts[68] is **GRANTED.** Plaintiffs are prohibited from offering any expert opinions or reports from Dr. Daniel N. Davidow, Dr. David M. Greer, Dr. Manal Durgin, Dr. Milton Anderson, Dr. Betty Muller and Dr. Ronald Federici as "medical expert[s]" concerning "the course of treatment, diagnoses and medical necessity for treatment of K.S."[69] Plaintiffs are also prohibited from offering any expert opinions or reports from Wayne Citron as an expert "on the insurance industry, insurance claims handling practices, and insurance policy drafting."[70]

New Orleans, Louisiana, April 23, 2020.

**WENDY B. VITTER**
**United States District Judge**

---

[68] R. Doc. 127.
[69] R. Doc. 127-2 at pp. 1-2.
[70] *Id.*